## SVOR *v.* MORRIS.

### ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 756. Submitted January 6, 1913.—Decided February 24, 1913.

One who settled on land not at the time open to entry but which became open does not have to go through the idle ceremony of vacating and settling upon it anew.

Where the first selection of lieu lands is rejected as irregular, the land is open during the interval before a new and regular selection is filed, and the homestead right of one who had previously settled thereon in good faith attaches and is superior to that under the new selection.

As between conflicting claims to public lands, the one whose initiation is first in time, if adequately followed up, is to be deemed first in right.

Under the act of May 14, 1880, 21 Stat. 141 and § 2265, Rev. Stat., the rights of a settler who fails to assert his claim within three months of settlement are not inexorably extinguished but only awarded to the next settler in order of time who does assert his claim and complies with the law, and advantage of this statute cannot be taken by a railroad company selecting land which is withdrawn from selection by having already been settled on. *Hastings & Dakota Ry. Co.* v. *Arnold*, 26 L. D. 538, approved.

Title acquired by a railway company or its assignee of lieu lands, im-

properly selected because not open by reason of settlement thereon, is held in trust for the settler by such assignee or his grantee who took with notice.

118 Minnesota, 344, reversed.

THE facts, which involve questions of priority of right between a homestead settler and a railway company selecting lieu lands under a grant, are stated in the opinion.

*Mr. C. A. Fosnes* for plaintiff in error.

*Mr. Owen Morris* for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This case presents a controversy over one of the quarters of an odd-numbered section within the indemnity limits of the railroad land grant of July 4, 1866, to the State of Minnesota, which the State transferred to the Hastings and Dakota Railway Company. 14 Stat. 87, c. 168. The trial court gave judgment for the plaintiff, which was affirmed by the Supreme Court of the State, 118 Minnesota, 344, and the defendant prosecutes this writ of error.

The facts material to the controversy are these: In 1883, after the completion of the road, the railway company filed in the local land office an indemnity selection of the tract in controversy, but neglected to comply with an existing regulation requiring that the selection be accompanied by a designation of the loss in the place limits in lieu of which the selection was made. Report Com'r G. L. O. 1879, p. 128, rule V. The selection was rejected by the local officers, but remained pending on successive appeals to the Commissioner of the General Land Office and the Secretary of the Interior until October 23, 1891, when it was finally rejected by the latter

because of that irregularity. Six days later Russell Sage, trustee, to whom the rights of the railway company under the land grant had then been assigned, filed another indemnity selection of the same tract, accompanied by a proper designation of the loss in lieu of which the selection was made, and in that connection claimed and alleged that the tract was then vacant and unappropriated. March 29, 1897, this selection was approved by the Secretary of the Interior, and the tract was certified under the grant, the certification being treated as the equivalent of a patent. 14 Stat. 97, c. 183. The plaintiff subsequently acquired the right and title of Sage, trustee, to the tract, but did so with full notice and knowledge of the occupancy and claim of the defendant.

In 1885 the defendant applied at the local land office to make a homestead entry of the tract and the application was denied, the circumstances being such that it could not be allowed. In 1888, while the selection of 1883 was pending, he settled upon the tract with the purpose of acquiring the title by compliance with the homestead law, and continuously thereafter resided upon the tract, occupied, improved and cultivated it, all the time asserting a claim under that law. The improvements which he made exceeded $2,000 in value and the area which he reduced to cultivation exceeded 100 acres. Being continuous, his occupancy and claim covered the interim between the final rejection of the first indemnity selection and the filing of the second one, but he did not again apply at the local office to make a homestead entry until 1904, which was after the tract had passed beyond the jurisdiction of the Land Department by the certification under the land grant. At the time of his settlement, and continuously thereafter, he possessed all the qualifications requisite to acquire the title as a homestead claimant.

The plaintiff's title receives no support from the indemnity selection of 1883, for, as has been seen, it did not

conform to the existing regulations in an essential particular and was finally rejected, October 23, 1891, for that reason. And to avoid an extended statement and discussion respecting an indemnity withdrawal made in 1868 and still another claim to the tract, both of which were terminated on or shortly before October 23, 1891 (see H. R. Ex. Doc. 246, 50th Cong., 1st Sess.; 26 Stat. 496, c. 1040, § 4; *St. Paul & Sioux City R. R. Co.*, 12 L. D. 541; *Creswell Mining Co. v. Johnson*, 13 L. D. 440), it will be assumed, without so deciding, that the defendant's claim receives no support from what he did anterior to that date.

Following the final rejection of the first selection there was an interval of six days in which the land was not only free from any claim under the land grant but open to settlement under the homestead law. So, apart from the defendant's earlier efforts, there can be no doubt that by his residence and occupancy during that interval he initiated and acquired a homestead right. He was not disqualified by reason of what he had done before, and, of course, it was not necessary that he should go through the idle ceremony of vacating the land and then settling upon it anew. This is the view uniformly applied in the Land Department. *Central Pacific Railroad Co.* v. *Doll*, 8 L. D. 355; *La Bar* v. *Northern Pacific Railroad Co.*, 17 L. D. 406; *Vandeburg* v. *Hastings & Dakota Railway Co.*, 26 L. D. 390. See also *Moss* v. *Dowman*, 176 U. S. 413. The second selection came after this homestead right had attached and therefore was subordinate to it. In its facts the case is like *Sjoli* v. *Dreschel*, 199 U. S. 564, and *Osborn* v. *Froyseth*, 216 U. S. 571, and unlike *Weyerhaeuser* v. *Hoyt*, 219 U. S. 380, and *Northern Pacific Railway Co.* v. *Wass*, 219 U. S. 426, and yet is within the principle recognized and enforced in each, viz., that as between conflicting claims to public lands the one whose initiation is first in time, if adequately followed up, is to be deemed first in right. The *Sjoli* and *Osborn* cases involved con-

flicts between claims initiated by homestead settlement and claims resting upon railroad indemnity selections subsequently filed, and because the former were first in time they were held to be superior in right. The *Weyerhaeuser* and *Wass* cases presented conflicts between railroad indemnity selections and claims initiated, one by an application to purchase under the Timber and Stone Act and the other by a homestead settlement, while the selections were pending, and it was held that the selections gave the better right because they were first in time.

That in point of residence, improvements and cultivation the defendant fully complied with the homestead law is not questioned, but it is contended that he lost his claim by not asserting it in due time at the local land office. It is true that the act of May 14, 1880, 21 Stat. 141, c. 89, § 3, in connection with Rev. Stat., § 2265, fixed three months from the date of settlement as the time within which the claim should be asserted at the local land office, and that the defendant did not conform to this requirement; but that is not a matter of which advantage can be taken by one who stands in the shoes of the railway company, as does the plaintiff. The statute does not contemplate that such a default shall inexorably extinguish the settler's claim, but only that the land shall be "awarded to the next *settler* in the order of time" who does so assert his claim and otherwise complies with the law. As was said by this court in *Johnson* v. *Towsley*, 13 Wall. 72, 90: "We think that Congress intended to provide for the protection of the first settler by giving him three months to make his declaration, and for all other settlers by saying if this is not done within three months any one else who has settled on it within that time, or at any time before the first settler makes his declaration, shall have the better right." The question has been repeatedly considered by the Secretary of the Interior in connection with railroad indemnity selections of lands covered by existing homestead settle-

ments which had not been asserted at the local office within the time prescribed, and his ruling has been that "A failure to file an application to enter lands within three months after settlement forfeits the claim to the next settler in order of time, but such default is not one that can be taken advantage of by a railway company." *Missouri, Kansas & Texas Railway Co.* v. *Troxel,* 17 L. D. 122, 124; *Hastings & Dakota Railway Co.* v. *Arnold,* 26 L. D. 538, 540. We regard that ruling as resting upon a proper conception of the statute.

Had the real facts been disclosed to the Land Department, viz., that the defendant was residing upon and occupying the land in virtue of a lawful homestead settlement antedating the second indemnity selection, it would have been the duty of the Secretary of the Interior to disapprove the selection, and no doubt he would have done so. But the real facts were not disclosed. On the contrary, it was claimed and alleged by the agent who acted for Sage, trustee, in making the selection, that the land was then vacant and unappropriated; and on that representation the Secretary's approval was given. Thus, the title was wrongfully obtained by one who was not entitled to it, and another who had earned the right to receive it was prevented from obtaining it when subsequently he came to assert his right before the Land Department. Whatever may have been the cause of the defendant's delay in so asserting his right, there is no suggestion that he either knew of or acquiesced in the representation that the land was vacant and unappropriated, or that he was in any wise apprised of the filing, pendency or approval of the second selection until after the land had passed out of the jurisdiction of the Land Department by the certification under the land grant. In short, the proceeding was essentially *ex parte,* and he was neither heard nor given an opportunity to be heard.

In these circumstances we think it is a necessary con-

clusion that the title acquired by Sage, trustee, was held by him in trust for the defendant, and that it is now held upon a like trust by the plaintiff, who took with full notice and knowledge of the defendant's occupancy and claim. *Rector* v. *Gibbon*, 111 U. S. 276, 291; *Widdicombe* v. *Childers*, 124 U. S. 400, 405; *Duluth & Iron Range Railroad Co.* v. *Roy*, 173 U. S. 587.

As the state courts proceeded upon the theory that the second selection gave the better right notwithstanding the defendant's claim was first in time, the judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*