## THOMAS CATHCART v. MINNESOTA & MANITOBA RAILROAD COMPANY.[1]

May 5, 1916.

Nos. 19,734—(137).

**Red Lake Indian Reservation —title to land.**

By the Nelson Act of January 14, 1889, and the acceptance thereof by the Chippewa Indians, lands within the Red Lake Indian reservation were ceded to the United States. The Indian title was extinguished. These lands were not, however, ceded absolutely. They were appropriated to the purposes of an express trust, and were to be disposed of in a manner expressly designated to carry out the purposes of that trust. They were accordingly not "unappropriated public lands," and

[1]Reported in 157 N. W. 719.

were not subject to entry under the homestead laws of the United States.

Action in the district court for Beltrami county to set aside the map of definite location of defendant railroad through plaintiff's homestead claim, to declare defendant company trustee of the title to the land and to require a conveyance of the title to plaintiff. From an order sustaining a demurrer to the complaint, plaintiff appealed. Affirmed.

*Ole J. Vaule* and *William P. Murphy,* for appellant.

*Hector Baxter* and *H. Seger Slifer,* for respondents.

HALLAM, J.

The land here involved is in Beltrami county adjacent to the Rainy river, and was part of the Red Lake Indian reservation. An act of Congress of January 14, 1889, known as the Nelson Act, provided for a commission to negotiate for the cession and relinquishment to the United States of so much of the Red Lake reservation as in the judgment of the commission should not be required for allotments under previous acts. The cession was to be for the purposes and upon the terms therein stated. The ceded lands were to be divided into two classes, one class consisting of pine lands, to be sold at auction, the other, consisting of agricultural lands, to be sold to actual settlers at $1.25 an acre. The proceeds of these sales were to be placed in the United States treasury as a permanent Indian trust fund which was to draw 5 per cent interest for 50 years, the interest to be expended, three-quarters paid in cash to the Indians severally, the remainder devoted to the establishment and maintenance of Indian schools.

In 1890 plaintiff settled upon the land in controversy, and thereafter continued to reside thereon, and improved and cultivated the same. He was not in 1890 a citizen of the United States.

On January 25, 1899, plaintiff declared his intention to become a citizen of the United States.

On April 17, 1900, an act of Congress granted to the defendant Minnesota & Manitoba Railroad Company, a right of way 100 feet wide through the ceded lands of the Red Lake Indian reservation. By said act there was also granted for station grounds, side tracks and shops,

and other structures, a limited amount of land adjacent to the right of way. Said act provided that before the railroad should be constructed "through any land, claim, or improvements held by individual occupants according to any custom of the tribes, treaties, or laws of the United States, compensation shall be made such occupant or claimant for all property to be taken or damage done by reason of the construction of such railroad." 31 St. 134.

On July 13, 1900, said defendant filed a map of definite location of its line of road, station grounds and other lands claimed by it, thereby selecting part of the land occupied by plaintiff as aforesaid.

On December 5, 1900, said map was approved by the secretary of the interior "subject to all  *  *  *  valid existing rights."

In the same year the defendant Canadian Northern Railroad Company acquired by lease from the Minnesota & Manitoba Railroad Company an interest in the lands so selected, and later took possession of the same and made improvements thereon.

On November 10, 1903, a government survey of the lands of the Red Lake reservation was completed and filed. On November 13, 1903, plaintiff tendered at the local land office his application to make homestead entry on said land. The local land office allowed the application subject to the right of way of defendants. On appeal the commissioner of the general land office reversed the decision of the local office and denied plaintiff's application. On appeal to the secretary of the interior this decision was affirmed. The ground of this decision was that the land was not subject to entry under the homestead laws of the United States.

Plaintiff, claiming that the acts of the commissioner of the general land office and of the secretary of the interior were based upon misinterpretation of the statutes of the United States, brings this action to have his rights in said land adjudged superior to those of defendants. To his complaint setting forth facts substantially as above stated, defendants demurred on the ground that the complaint stated no cause of action, and the trial court sustained the demurrer.

The real question in the case is, were these lands subject to homestead entry on January 25, 1899, at the time when plaintiff in possession declared his intention to become a citizen of the United States, and accordingly became a qualified homesteader. If they were, then under well-

settled rules, plaintiff acquired priority rights therein, though the lands were still unsurveyed and no application for entry had yet been made. 21 St. 141.

It is significant that the interior department has always regarded these lands as not subject to homestead entry. Turnbull v. Roosevelt Townsite, 34 Land Office Dec. 94; Cathcart v. Minnesota & M. R. Co. Id. 619. On August 1, 1899, the commissioner of the general land office published a departmental circular warning all persons not to go upon any of the lands within the limits of any of said reservations, except upon certain lands not involved here, for any purpose or with any intent whatsoever, and that no settlement or other rights could be secured upon said lands, and that all persons found unlawfully thereon would be dealt with as trespassers and intruders. Turnbull v. Roosevelt Townsite, 34 Land Office Dec. 94, 99.

The construction of the interior department, while not conclusive is important, for the regulation and decision of the secretary of the interior, under whose supervision an act is to be administered, "while not conclusive is entitled to great respect and ought not to be overruled without cogent and persuasive reasons." LaRoque v. United States, 239 U. S. 62, 36 Sup. Ct. 22, 60 L. ed. 147, citing United States v. Moore, 95 U. S. 760, 763, 24 L. ed. 588; Hastings & D. R. Co. v. Whitney, 132 U. S. 357, 366, 10 Sup. Ct. 112, 33 L. ed. 363; United States v. Hammers, 221 U. S. 220, 225, 228, 31 Sup. Ct. 593, 55 L. ed. 710; Logan v. Davis, 233 U. S. 613, 627, 34 Sup. Ct. 685, 58 L. ed. 1121.

We do not, however, base this decision upon presumption. We are of the opinion that the secretary of the interior ruled correctly upon the law. The homestead law in force in 1899 provided as follows:

"Every person who is the head of a family, or who has arrived at the age of twenty-one years, and is a citizen of the United States, or who has filed his declaration of intention to become such, as required by the naturalization laws, shall be entitled to enter one quarter-section or a less quantity of *unappropriated public lands.*" U. S. Rev. St. § 2289. This gives the right to enter only "unappropriated public lands." In the last analysis the question is, was this land upon which plaintiff under-

took to make entry at that time "unappropriated public land." It seems plain to us that it was not.

Prior to the Nelson Act of January 14, 1889, this land was included within an Indian reservation, and land included within any reservation was not subject to pre-emption or homestead entry. U. S. Rev. St. § 2258; King v. McAndrews, 104 Fed. 430, 437. Plaintiff's contention is that the acceptance of the Nelson Act by the Indians operated "as a complete extinguishment of the Indian title," that these lands were not thereafter "lands included in any reservation," and were then subject to homestead entry. Generally, when the Indian title is extinguished, the lands do cease to be Indian country and become part of the public domain. But they become part of the public domain only when by treaty or act of Congress no different rule is made applicable. Bates v. Clark, 95 U. S. 204, 208, 24 L. ed. 471; Clairmont v. United States, 225 U. S. 551, 558, 32 Sup. Ct. 787, 56 L. ed. 1201. Congress may, in any manner it sees fit, appropriate the lands owned by the government to special purposes, and thereby take them out of the class of "unappropriated public lands." These lands were appropriated by the Nelson Act to the purposes of an express trust, and were to be disposed of in a manner expressly designated, to carry out the purposes of that trust. We are not concerned with the question whether Congress might, in violation of that trust, have thrown them open to homestead entry. Congress did not do so. The point is, that as long as these lands were appropriated to the purposes of the trust created by the Nelson Act they were not "unappropriated public lands," and were not subject to homestead entry under the homestead laws.

This position is sustained in Minnesota v. Hitchcock, 185 U. S. 373, 22 Sup. Ct. 650, 46 L. ed. 954. In that case the question was whether sections 16 and 36 of these ceded lands passed under the school grant to the state. It was said, citing a prior decision, that the school land grant was of "public lands" and that the term "public lands" is "habitually used in our legislation to describe such as are subject to sale or other disposal under general laws" (page 391) [22 Sup. Ct. 657, 46 L. ed. 954]; but it was held the ceded lands of the Red Lake reservation were not such "public lands." Congress could, the court said, have taken simply a cession of the Indian right of occupancy, and thereupon the lands

would have become public lands and within the scope of the school grant. "But it also had the power to make arrangements with the Indians by which the entire tract would be otherwise appropriated" (page 394) [22 Sup. Ct. 658, 46 L. ed. 954], and this the court, in effect, held that Congress did do, and it was held that none of these ceded lands passed under the school grant to the state. Brewer, J. further said (pp. 395, 396 and 402, 22 Sup. Ct. pp. 659, 661, 46 L. ed. 954): "It was a distinct conveyance by the Indians of certain lands for a named purpose. Now if the United States, the recipient of this cession, was competent to carry into execution the expressed purposes, does it not follow that the cession subjected all the lands to them? Can it be said that the Indians, making the cession, for a moment supposed that the lands ceded were not to be used for the purposes named? * * * Instead of removing these Chippewa Indians from Minnesota, the purpose of the legislation and agreement was to fit them for citizenship by allotting them lands in severalty and providing a system of public schools. Surely it could not have been understood by the Indians that only part of the lands they ceded were to be used for these purposes. They were dealing with the tract as an entirety, and they had a right to expect that the entire tract would be used as declared in the act and agreement."

United States v. Chippewa Indians, 229 U. S. 498, 33 Sup. Ct. 811, 57 L. ed. 1299, involved the very question whether these ceded lands were subject to homestead entry. The ceded lands of the Mille Lacs band of Chippewas, while embraced within the Nelson Act, were in fact disposed of, not under the provisions of that act, but under the general land laws, pursuant to a joint resolution of Congress December 19, 1893 (28 St. 576), and May 27, 1898 (30 St. 745). The court held that this method of disposal of these lands was in disregard of the rights of the Indian and that it "was clearly in violation of the trust * * * and the Indians are entitled to recover for the resulting loss."

White v. Wright, 83 Minn. 222, 86 N. W. 91, is also in point, but in as much as since that case was decided the questions involved have been subject of decision by the Federal supreme court, we have considered the matter anew in the light of these decisions.

Order affirmed.