UNITED STATES et al. v. NEW ORLEANS PAC. RY. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. October 3, 1916. Rehearing Denied November 4, 1916.)

No. 2870.

1. ADVERSE POSSESSION ⊛85(3)—CLAIM OF TITLE—EVIDENCE.
Evidence *held* insufficient to show that an occupant of land patented to another held the land or any part of it adversely under a claim of right for the requisite period.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 503, 688–690; Dec. Dig. ⊛85(3).]

2. VENDOR AND PURCHASER ⊛232(1)—BONA FIDE PURCHASERS—NOTICE OF OCCUPANT'S RIGHTS.
Where an occupant of land patented to a railroad company, though knowing that it was "claimed as railroad land" after an ineffective attempt to enter the land under the homestead law, took no further action indicating the assertion of a claim to the land except to live on a part of the tract in the midst of the woods covering the rest, and returned and paid taxes only on his improvements, purchasers of the record title were justified in believing that his occupancy was that of a mere intruder.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 540, 550, 551; Dec. Dig. ⊛232(1).]

3. ADVERSE POSSESSION ⊛68—CLAIM OF OWNERSHIP—INTEREST.
Mere occupancy of land, if unaccompanied by any claim of ownership, no matter how long continued, does not confer title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 387–393; Dec. Dig. ⊛68.]

4. PUBLIC LANDS ⊛128—PATENTS—TRUSTS—LACHES.
The claim of an occupant of land patented to another, claiming the beneficial ownership of the land on the theory that the title passing from the government by the issue of the patent enured to his benefit, is cognizable only in equity, and is subject to the equitable defenses of staleness and laches.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 344; Dec. Dig. ⊛128; Trusts, Cent. Dig. § 101.]

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. PUBLIC LANDS ⊚≈128—PATENTS—TRUSTS—LACHES.

In the case of such an implied or constructive trust, unless there has been a fraudulent concealment of the cause of action, lapse of time is as complete a bar in equity as at law, and, independently of any statute of limitations, a court of equity declines to assist one who has slept upon his rights and shows no excuse for his laches.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 344; Dec. Dig. ⊚≈128.]

6. PUBLIC LANDS ⊚≈128—PATENTS—TRUSTS—LACHES.

In April, 1887, a railroad company accepted the provisions of Act Feb. 8, 1887, c. 120, 24 Stat. 391, confirming to it land previously granted to its assignor, but providing that lands occupied by actual settlers at the date of the definite location of the road and still in their possession or the possession of their heirs and assigns should be excepted from the grant and be subject to entry under the public land laws. A portion of the land previously patented to the railroad company was then occupied by the intervener. The railroad company had previously sold a part of such land and appropriated the proceeds to its own use, and soon afterwards disposed of the rest of the land, and the successive holders of the record title thereafter dealt openly with the land as their own without admitting that the intervener had any beneficial interest in it or in the proceeds of sales. They had the land regularly assessed to them and regularly paid the taxes thereon. Though the intervener knew the facts, and though the conduct of the holders of the record title was disclosed by public records, the intervener took no action to enforce his claim for over 25 years, but continued to live on a' small part of the land in the midst of the woods covering the remainder of the land. *Held* that, if the railroad company when it acquired the legal title held it in trust for the intervener, the resulting right of action to enforce such trust accrued in 1887 and was barred by the intervener's inexcusable laches.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 344; Dec. Dig. ⊚≈128; Trusts, Cent. Dig. § 101.]

Appeal from the District Court of the United States for the District of Louisiana; Aleck Boarman, Judge.

Suit by the United States against the New Orleans Pacific Railway Company and others, in which Stephen N. Grant intervened. From a decree in favor of defendants, complainant and the intervener appeal. Affirmed.

Geo. Whitfield Jack, U. S. Atty., and Robert A. Hunter, Asst. U. S. Atty., both of Shreveport, La.

Don E. So Relle, of Many, La., for appellant intervener.

H. H. White, of Alexandria, La., James G. Palmer, of Shreveport, La., F. G. Hudson, Jr., of Monroe, La., and Mark Norris, of Grand Rapids, Mich., for appellees.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

WALKER, Circuit Judge. This case in its pleadings and evidence and in the decree rendered is very similar to the case of United States, Newton B. Terrell, and Elijah W. Terrell v. New Orleans Pacific Railway Company & Gulf Lumber Company, 235 Fed. 833, —— C. C. A. —— (present term, U. S. C. C. A., 5th Circuit). It is unlike that case in that the intervener in this case, Stephen N. Grant, who commenced to live on part of the land in question in 1886, following a

verbal purchase from one Killen, who had lived on the land since 1880, of the latter's "improvements and claim," continued to live there up to the time of the filing of the bill, was qualified to make a homestead entry, and has not homesteaded other land. For support of the part of the decree, appealed from which denied relief to the government, it is enough to refer to the ruling made in the case above cited.

[1, 2] As to the part of the decree which rejected the demand of the intervener and quieted the W. P. Pickering Lumber Company and the Southland Lumber Company in the ownership of the parts of the 160 acres in question claimed by those companies, respectively, the following facts disclosed by the record are deemed to have some pertinency: By three deeds made and duly recorded in 1886, 1888, and 1889, respectively, the patentee sold and conveyed different parcels, together embracing the 160 acres in question, to three individuals, through whom, by mesne conveyances, all duly recorded, the title conferred by the patent was acquired by the two lumber companies mentioned by warranty deeds made in 1902 and 1903, respectively, each of which companies paid at the time of its purchase a fair price for the land so conveyed to it. Since the date of the patent, March 3, 1885, the successive holders of the record title to the land in question have had it regularly assessed to them and have regularly paid the taxes due thereon up to the present time. From 1880 to 1885, inclusive, Killen had assessed to him the improvements on the land and paid taxes thereon for those years. From 1890 to 1914, inclusive, the intervener had the improvements assessed to him and paid taxes thereon for those years. According to his own statement, his intention relative to the land when he moved on it following his purchase from Killen was to make it his home and to acquire it under the homestead law if he could.

There is nothing in the record to indicate that at any time prior to the filing of his intervening petition he claimed to be the owner of the land. In the latter part of 1890, more than five years after the issue of the patent, and after the patentee had sold and conveyed its interest, he filed in the local land office an application to enter the land under the homestead law. After that ineffective proceeding ended, he took no further action indicative of the assertion of any claim beyond merely continuing to live on the land until he filed his intervening petition in this case. A tract of something over 30 acres, some of it land not embraced in the 160 acres in question, has been cleared for many years. The improvements, consisting of a "common rough house" of six rooms, and some outhouses, are located on this clearing. On another part of the 160 acres a tract of about 2 acres was cleared and inclosed within a year or two before this suit was brought. Within a year after the intervener moved on the land following his purchase from Killen, he, as stated by himself in his testimony, learned that it was "claimed as railroad land." The claim that the railroad company and the other successive holders of the record title held that title, not as the beneficial owner of the land, but in trust for the intervener, was, so far as anything in the record discloses, made by him for the first time when he filed his intervening petition in this case. There is no suggestion in the pleadings in the case that the right to the land

of the holders of the record title had been lost by another's adverse possession of it for the time required to effect that result.

[3] The intervener cannot sustain a complaint against the decree appealed from on the ground that the evidence showed that he had acquired a right to the land by an adverse possession of it. Mere occupancy of land, if unaccompanied by any claim of ownership, no matter how long continued, does not confer title. Sharon v. Tucker, 144 U. S. 533, 12 Sup. Ct. 720, 36 L. Ed. 532; Jasperson v. Scharnikow, 150 Fed. 571, 80 C. C. A. 373, 15 L. R. A. (N. S.) 1178, and note; 2 Corpus Juris, 125. Certainly the intervener's conduct was not such as to notify parties seeking information upon the subject that he held the land or any part of it adversely and not in subordination to any title or claim of another. His effort to acquire the land under the homestead law, though made in a tribunal the jurisdiction of which over the land was terminated by the issue of the patent before that tribunal was resorted to, was a distinct admission that he was not the owner. It was not made to appear that his intention with reference to the land underwent a change after that abortive proceeding ended. In the absence of other evidence of a change in the character of the intervener's possession, the fact that there was no change is persuasively indicated by his continuing to return and pay taxes on improvements only, and also by the circumstance that he is now in court praying that, by a cancellation of the attacked patent, he be afforded the opportunity to acquire ownership of the land under the homestead law. The evidence leaves it in doubt whether either of the successive holders of the record title was aware that any one was living on the land. If the facts as they existed at the time of and shortly prior to the purchases of the two defendant lumber companies were known to the representatives of those companies, they were such as were calculated to lead one contemplating a purchase from the holders of the record title to the conclusion that the intervener's occupancy of a part of the tract, in the midst of the woods which covered the remainder of it, was that of a mere intruder, who set up no claim of ownership and whose conduct indicated an abandonment of the only claim he had ever made of a right to acquire ownership, which many years before he had ineffectively asserted in a tribunal which was without jurisdiction to enforce the claim, if it ever was a valid one. We conclude that it satisfactorily appears from the evidence that the intervener did not hold the land in question or any part of it adversely under a claim of ownership for the period requisite to confer title, and, further, that his conduct was such as was calculated to lead one in the position of the defendant lumber companies, prior to their purchases, to the conclusion that his occupancy of a part of the land was of a kind that prevented its being an obstacle to the acquisition of ownership of the entire tract by a conveyance from the holder of the record title.

[4-6] We come now to a consideration of the claim that in equity the intervener was entitled to the beneficial ownership of the land, and that this right of his is still enforceable by a decree adjudging that those having the record title hold in trust for his use and benefit. The theory of this claim is that, at the time of the issue of the patent, the intervener had acquired such a right to the land that the

title which passed from the government by the issue of the patent inured in equity to his benefit and was there enforceable against the patentee and any subsequent holder of such title not protected as a bona fide purchaser for value without notice of the equity or by an estoppel effective against the claimant of the equity. The claim does not imply that the ownership of the holder of the legal title is or has been assailable at law. Silver v. Ladd, 7 Wall. 219, 228, 19 L. Ed. 138; Burke v. Southern Pacific R. R. Co., 234 U. S. 669, 675, 34 Sup. Ct. 907, 58 L. Ed. 1527; Svor v. Morris, 227 U. S. 524, 33 Sup. Ct. 385, 57 L. Ed. 623. It is not cognizable elsewhere than in a court of equity, and is subject to the equitable defenses of staleness or laches. The claimant's lack of due diligence in asserting the claim against a holder of the legal title who does not acquiesce in its validity renders it unenforceable in equity. In the case of such an implied or constructive trust, unless there has been a fraudulent concealment of the cause of action, lapse of time is as complete a bar in equity as at law, and, independently of any statute of limitations, a court of equity declines to assist one who asserts such a claim, if he has slept upon his rights and shows no excuse for his laches in asserting them. Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610, 30 L. Ed. 718.

Assuming that the circumstances attending the acquisition of the legal title by the patentee were such as to give rise to a trust in favor of the intervener, the resulting right of action accrued not later than April, 1887, when the patentee accepted the provisions of the act of Congress of February 8, 1887. Before the date of such acceptance the patentee had already sold part of the land in dispute, and, as it may be inferred, had appropriated the proceeds of the sale to its own use. The rest of the land was similarly disposed of by the patentee before the end of 1889. The subsequent successive holders of the title conferred by the patent in like manner openly dealt with the land as their own, obviously not admitting that the intervener had any beneficial interest in it or in the proceeds of the successive sales of it. Within a very short time after the trust, if it ever existed, became enforceable, the intervener learned of the facts which he now claims gave him an equitable right of action, and the conduct of the holder of the record title, not concealed, but contemporaneously disclosed by public records, evidenced a distinct repudiation of the alleged trust relation, which entitled the intervener to immediate relief and opened the door to the defense of laches. Patterson v. Hewitt, 195 U. S. 309, 25 Sup. Ct. 35, 49 L. Ed. 214. The intervener took no action then to make known or enforce the claim now asserted, and allowed more than a quarter of a century to elapse before he presented the claim in a court of equity. During all that time the land, except the two cleared tracts above referred to, remained uninclosed and covered with virgin timber, all of it was openly dealt with as their own by the successive holders of the legal title, and, though the intervener lived on and used a small part of it, the circumstances attending his connection with the land continued to be such as to negative a conclusion that he was setting up a claim that he had acquired the beneficial ownership of the whole or any

part of it. We think nothing more than a statement of these facts is required to support the conclusion reached, that the evidence conclusively shows that the intervener was guilty of such inexcusable laches as to make now unenforceable the equitable claim which he asserts, however well founded that claim once may have been.

It follows from the conclusions above stated that neither of the appellants has a tenable ground of complaint against the decree appealed from.

That decree is affirmed.

MAXEY, District Judge, was prevented by illness from participating in the decision of this case.