HEBERT, Respondent, v. BOND, et al (RARE MINERALS CO., Intervener), Appellants.

(228 N. W. 185.)

(File No. 5325.   Opinion filed December 10, 1929.)

*Bangs & Wood* and *Turner M. Rudesill,* all of Rapid City, for Appellant.

*W. G. Rice* of Deadwood, and *George E. Flavin,* of Rapid City, for Respondent.

POLLEY, J.   Plaintiff brought this action to quiet title in himself to a lode mining claim in Pennington county.   Frank C. Bond and Carl A. Hunter were named as defendants.   Thereafter the Rare Minerals Company came into the case as intervener. From that time on, Bond and Hunter appear to have dropped out of the case and the Rare Minerals Company took the place of defendants, and in this opinion the plaintiff, Hebert, will be referred to as plaintiff and the Rare Minerals Company as defendant.

The evidence shows: That, on or about the 10th day of March, 1886, the plaintiff, a citizen of the United States, went upon the unsurveyed and unappropriated mineral lands of the United States and made a discovery of mineral-bearing rock, to wit, tin ore in place. He thereupon performed all the acts and things requisite and necessary to constitute the location and appropriation of a good and valid mining claim, and named the same Tin City lode mining claim, 150 feet in width on either side of the middle of the said lode or vein and running 900 feet in a northerly direction and 600 feet in a southerly direction from the center of his discovery shaft. Thereafter, and on the 21st day of April, 1886 plaintiff recorded in the office of the register of deeds in Pennington county a location certificate of the said lode mining claim. That, during all of the time from and after the location of the said Tin City lode and down to the commencement of this action, plaintiff by and through himself, his agents and lessees, performed the necessary development work requisite to maintain his ownership and right of possession to the said mining claim.

On or about the 10th day of February, 1919, plaintiff entered into a written contract with one W. N. Hunter, who was acting for and on behalf of defendant, whereby plaintiff agreed to sell and convey to said Hunter the said Tin City mining claim for a consideration of $30,000, to be paid to plaintiff according to the terms of the said contract. Immediately after the execution of the said contract, defendant entered upon the said mining claim and proceeded to make preparations to mine and ship the ore therefrom. Thereupon one Mary McDermott, claiming to be the owner of the said ground by virtue of a homestead patent issued to her by the United States government, claimed to be the owner of the said mining claim, and drove defendants from the said premises.

The facts relative to the McDermott claim appear to be as follows: Some time on or about the month of July, 1886, she built a dwelling house on a small tract of ground along the creek bottom, and adjacent to the said Tin City lode, that was susceptible of being used for farm and gardening purposes. It is not claimed that she filed a homestead claim in the Land Office, if at all, until some time after 1900. It is not shown or attempted to be shown that she claimed any specific tract of ground or that she had in any manner marked the boundaries of any tract of land or had a

survey made of any tract of land, and she could not have made a claim by government subdivisions of the land because it is a matter of public record of which the court will take judicial notice that the township in which said homestead is situated was not surveyed until after the month of November, 1897. Neither does she appear to have had any clear idea of the location of the land she was claiming, because, when she made final proof in 1904, she applied for and received a patent to the N. ½ N. E. ¼ of section 22, the S. E. ¼ S. E. ¼ of section 15, and the S. W. ¼ S. W. ¼ of section 14, all in township 2 south of range 4 east. The Tin City lode is situated in the west half of the N. E. ¼ of section 22, about two-thirds thereof being in the N. W. ¼ N. E. ¼ of said section. She was not satisfied with the tract described in the patent, and in 1912 she surrendered the same for cancellation, and in lieu of the said tract applied for and received a patent to the N. ½ N. E. ¼ and the N. E. ¼ N. W. ¼ of section 22 and the S. E. ¼ S. E. ½ of section 15 in said township. In 1916 she surrendered this latter patent for cancellation and applied for and received a patent to the W. ½ N. E. ¼ and the S. ½ S. W. ¼ of section 22 of said township. This tract included the whole of the Tin City lode.

During all of the time from 1886 down to the commencement of this case Mrs. McDermott was well acquainted with the plaintiff; she was familiar with the Tin City lode, knew of the mineral character of the same, and knew of the development work that was being done thereon by plaintiff. In fact, she obtained permission from plaintiff to plow up and use a small portion of the south end of the Tin City claim; and down to the month of March, 1919, she never asserted any claim, nor intimated to any one that she claimed any part of the Tin City lode. As late as August, 1918, she told one of the witnesses who was on the ground doing some surveying for a lessee of plaintiff that the Tin City lode was Hebert's ground, and that she made no claim to it, and plaintiff testified that as late as March, 1919, Mrs. McDermott admitted to him that he owned the said ground.

In regard to the assertion of ownership by Mrs. McDermott, the trial court made the following finding of fact:

"That on the 17th day of February, 1919, the plaintiff, The Rare Minerals Company, a corporation, being in possession of the

said Lode Mining Claim under the said contract and the said plaintiff, Frank Hebert, being then temporarily absent from the State of South Dakota, the said Mary E. McDermott, for the first time, made claim to the title and possession of the lands embraced within the limits of the said Lode Claim, and that thereupon the officers of the plaintiff [intervener] The Rare Minerals Company, a corporation, made careful search and investigation of the source and condition of the title thereto and became informed and well knew that the said patents and each thereof were procured by said Mary E. McDermott to be issued to her by certain false and fraudulent representations by her made to the land department of the United States of America and its officials and were procured and issued by false imposition and mistake in the following particulars, to wit: That the lands included in the said patents and embraced within the limits of the said Tin City Lode Mining Claim were and are mineral in character and not agricultural and were and are valuable for the mineral contained therein and were and are of no value as agricultural lands, and that said Tin City Lode Mining Claim contains valuable deposits of tin and mica, that the said Mary E. McDermott was not at the time of the issuance of the said patents or any thereof, or at the time of her applications to enter said lands, or at any other time in possession of the lands embraced within the limits of the said Tin City Lode Mining Claim or any part thereof, and at all of the times last mentioned the said lands so embraced within said mining claim were not vacant or unoccupied lands of the United States of America, and were not subject to homestead entry, and that notwithstanding the said facts the said Mary E. McDermott falsely and fraudulently represented as aforesaid that the lands were agricultural and not mineral in character and that the same were vacant, unoccupied and unappropriated lands of the United States of America, in the possession of her, the said Mary E. McDermott, and well knew that at all of the times hereinbefore mentioned the said Tin City Lode Mining Claim was well and notoriously known as a mining claim and the lands therein as mineral in character, and as a property which with reasonable development would become valuable as a mine; and that at said time, to wit: on or about the 17th day of February, 1919, the plaintiff, The Rare Minerals Company, a corporation, and its officers became informed and well knew that the said Mary E. Mc-

Dermott had acquired and received the said patents and the title to the lands herein described and embraced within the limits of the said Tin City Lode Mining Claim by means of the false and fraudulent representations made by her and by imposition upon the officers of the land department of the United States and the defendant, Frank Hebert and by gross mistake on the part of the said officers as to character of said lands so embraced within the limits of the said Tin City Lode Mining Claim, and the rights of the defendant, Frank Hebert, thereto."

At the close of the trial, judgment was entered decreeing, among other things, that the plaintiff, Frank Hebert, was and at all times since on or about the 10th day of March, 1886, had been, the owner and entitled to the possession of the said Tin City lode mining claim; that the said lode mining claim then was, and at all times since the said 10th day of March, 1886 had been, a valid and existing lode mining claim under and by virtue of the laws of the United States of America, and that the title of the said Frank Hebert therein and thereto was good and valid as against all persons except only the United States of America and the rights of the Rare Minerals Company under and by virtue of the contract of sale entered into by and between the said Frank Hebert and the Rare Minerals Company during the month of February, 1919. From this judgment the Rare Minerals Company appeals.

In its brief, appellant says that "the principal, if not the only debatable question presented by the record is whether or not the McDermott patnet is subject to collateral impeachment, and if so, whether it has been successfully impeached."

In view of this statement, appellant appears to have no conception of the nature or purpose of this action. The question of impeaching the McDermott patent is not remotely involved in the case. Plaintiff is not making a collateral attack or any attack upon the patent, nor does he desire nor would it be to his advantage to have the said patent canceled or set aside.

The only questions involved in the case are: First, Did the plaintiff ever make a valid location of the said ground? Second, Is the ground covered by the Tin City Lode Mining Claim mineral in character? And, third, If such location was made, did the plaintiff lose his rights therein by abandonment prior to the issuance of the McDermott patent?

Upon the first question, that of the validity of plaintiff's location, the evidence leaves no possible doubt. The testimony is undisputed, and the trial court found that the plaintiff made a discovery of mineral-bearing rock in place within the boundaries of the said claim on or about the 10th day of March 1886, and did all the other acts and things requisite and necessary to constitute a good and valid mining location. Nor is there any doubt as to the mineral character of the land. This is shown, not only by the testimony of Hebert and others, but by the report issued by the defendant itself, whereby it appears that the ore contains tin of the value of $16.90 per ton, and mica of the value of $6.40 per ton; that there is a sufficient quantity of the said ore to supply a 200-ton mill indefinitely, and that the same can be mined and milled at a cost of $11.35 per ton. This leaves a profit of $11.95 per ton, amounting during a year's run to a profit of more than $700,000.

When the officers of defendant company learned, which appears to have been during the month of March, 1919, that Mrs. McDermott had a patent conveying to her the ground occupied by the Tin City lode, they decided that her title was better than Hebert's, and entered into negotiations with her whereby they purchased her entire homestead claim for the sum of $10,000, but, still being in some doubt as to the validity of her right to the mining ground, they proceeded to and did actually attempt to relocate the said Tin City lode as a mining claim.

It is contended by the appellant that the evidence fails to show that the plaintiff performed $100 worth of assessment work during each of the years since he located the said claim. He testified that he did, but it is not material whether he did or not. Where a party owning a mining claim fails for one or more years to do his assessment work, the claim becomes subject to relocation by a second party, providing relocation takes place before the original owner has returned and resumed work upon the claim, but, if the original owner does return and resume work upon the claim before the rights of a second party have intervened, then his rights are restored to the same extent as though there had been no failure to keep up the assessment work. Section 4620, U. S. Comp. St. 1918, section 2324, Revised Statutes U. S. 1878 (30 USCA § 28); Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735; Lindley on Mines, § 651, and many cases cited.

It is not disputed that Hebert was in the undisputed possession of the claim and carrying on development thereon when he entered into the contract to sell it to defendant.

When Mrs. McDermott obtained her patent from the government, plaintiff was the owner of, and entitled to the possession of, the Tin City claim. The evidence shows, and the trial court found as a fact, that she obtained her patent by means of "certain false and fraudulent representations by her made to the Land Department," thereby practicing a fraud upon both the plaintiff and the government. Having acquired the title to plaintiff's mine in this manner, she took title impressed with a trust in his favor.

In Svor v. Morris, 227 U. S. 524, 33 S. Ct. 385, 387, 57 L. Ed. 623, a case where one party, through fraud, acquired title to another's property, that court say: "Thus, the title was wrongfully obtained by one who was not entitled to it, and another who had earned the right to receive it was prevented from obtaining it when subsequently he came to assert his right before the Land Department. Whatever may have been the cause of the defendant's delay in so asserting his right, there is no suggestion that he either knew of or acquiesced in the representation that the land was vacant and unappropriated, or that he was in any wise apprised of the filing, pendency, or approval of the * * * selection until after the land had passed out of the jurisdiction of the Land Department by the certification under the land grant. In short, the proceeding was essentially ex parte, and he was neither heard nor given an opportunity to be heard. In these circumstances we think it is a necessary conclusion that the title acquired by Sage, trustee, was held by him in trust for the defendant, and that it is now held upon a like trust by the plaintiff, who took with full notice and knowledge of the defendant's occupancy and claim."

And in Howe v. Parker (C. C. A.) 190 F. 738, 746, the court, speaking through Judge Sanborn, say: "If the officers of the Land Department are induced to issue a patent to the wrong party by an erroneous view of the law or by a gross mistake of the facts proved, or by a decision induced by fraud, the rightful claimant is not remediless. He may in a court of equity avoid the effect of the decision and the patent and charge the legal title derived from it with a trust in his favor."

And to the same effect is Cohen v. Fall, decided by (App. D. C.) 284 F. 734, and in this case, Mrs. McDermott having acquired title to plaintiff's ground through fraud, she took the same charged with a trust in his favor, and such. title was properly quieted in plaintiff by the trial court.

The judgment and order appealed from are affirmed.

SHERWOOD, P. J., concurs.

CAMPBELL, J., concurs in the result.

BROWN, J., dissents.

BURCH, J. (concurring specially). I am satisfied the judgment should be affirmed. Hebert, by the act of locating, working, and occupying the mine, acquired a right under the federal mining law. His location antedates the homestead filing, and there is no evidence Mrs. McDermott had acquired any rights under the homestead law prior to filing her homestead claim. After the location of the mine, that part of the federal domain was not subject to homestead entry, having been already appropriated. It may be that Hebert did not comply with the law as to assessment work in many of the years that he held the mine. But it is well known that such failure may be cured by subsequent compliance before intervening rights accrue. Buffalo Zinc Co. v. Crump, 70 Ark. 525, 69 S. W. 572, 91 Am. St. Rep. 87, 22 M. R. 276; Emerson v. McWhirter, 133 Cal. 510, 65 P. 1036, 21 M. R. 470; Klopenstine v. Hays, 20 Utah, 45, 57 P. 712; Lakin v. Sierra Buttes Co. (C. C.) 25 F. 337, 343; Lacey v. Woodward, 5 N. M. 583, 25 P. 785.; Pharis v. Muldoon, 75 Cal. 284, 17 P. 70, 15 M. R. 348; Gonu v. Russell, 12 M. R. 630; Willitt v. Baker (C. C.) 133 F. 937. If the property is in fact a mine, and in this case this must be assumed, since appellant purchased it of Hebert as a mine and by its deal with McDermott still seeks to acquire the mine for mining purposes, there could be no intervening mining right except as it might be acquired under mining law. There is no adverse mining right here involved. McDermott's filing under the law could not embrace a mine, but her filing did cover and include the small tract occupied by Hebert as a mine and held by him under and by virtue of mining law, and her patent covered all the land within her filing without excepting the mine. The mine was not subject to homestead, and should have been excluded from the filing and subsequent patent. Whether it was included by mistake or design, that

illegal act could not divest Hebert of his vested right legally acquired. Hebert in this action seeks to have the title so acquired impressed with a trust in his favor. I am satisfied he is entitled to have his legal rights so protected.

The contention that to declare a trust is to attack and invalidate the patent is without merit. Mr. Justice Holmes, in the case of Becher v. Contoure Laboratories, 279 U. S. 388, 49 S. Ct. 356, 357, 73 L. Ed. 752, decided by the United States Supreme Court in an opinion filed May 13, 1929, says, "Suits against one who has received a patent of land to make him a trustee for the plaintiff on the ground of some paramount equity are well known." In Rector v. Gibbon, 111 U. S. 276, 4 S. Ct. 605, 28 L. Ed. 427, the United States Supreme Court held that the officers of the Land Office determine the legal title that is to pass from the United States, but that does not preclude a court of equity after issuance of patent from inquiring whether the legal title from the United States is not equitably subject to a trust in favor of other parties. In that case, the one in whose favor a trust was declared had appeared and asserted his right before the officers of the Land Office and received an adverse adjudication against his claim. Still the court held his claim to have been valid under the law, and that he was the one legally entitled to have received the patent, and consequently was the equitable owner, and declared a trust in his favor. In the instant case, Hebert had no hearing, but his rights until now have not been adjudicated in any manner—a much stronger case in his favor.

Treating, as we must in this case, the property in dispute as a located, worked, and occupied mine subject to acquisition by mining law only, McDermott acquired no right therein as against Hebert, and her title is but a naked legal title subject to Hebert's paramount equitable rights. By acquiring the legal title, McDermott put it beyond the power of the Land Office to protect Hebert. Whether she did so inadvertently or purposely, her proof was false, working a fraud upon Hebert. Thereafter, no matter how perfect his compliance with the law and his right to the mine, he could not have it unless aided by equity. Surely under such circumstances a court of equity has power to secure his right, and as a means best adapted to that end may declare a constructive trust in his favor.

The mine formed only a very small part of the homestead, and Hebert's right to that does not seem to have ever been questioned by McDermott; certainly his possession and use was not disturbed. The Rare Minerals Company contracted to purchase the mine of Hebert for $30,000. Discovering the condition of the title, the company, without advising either Hebert or McDermott of its object, purchased the homestead title, and then attempted to repudiate the contract with Hebert and claim the mine as a mining property acquired from McDermott. The company certainly could obtain no better title than McDermott had, and, in view of its position and the equities of the case, ought not to acquire more than McDermott claimed to have. There is no proof McDermott ever claimed the mine, but such evidence as there is indicates she not only did not claim the mine, but recognized it as belonging to Hebert.