# OREGON AND CALIFORNIA RAILROAD COMPANY v. UNITED STATES. No. 2.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 187. Argued March 4, 1903.—Decided April 6, 1903.

On the authority of the preceding case, *Held*, that where a duly qualified entryman made a *bona fide* settlement upon lands within the indemnity limit of the grant made by act of Congress of May 4, 1870, with the intention, whenever the way was opened by a survey, to enter the lands under the homestead laws, his rights were superior to those acquired, or that could have been acquired, by the railroad company under any selection by it of indemnity lands made after the date of such settlement.

THE case is stated in the opinion of the court.

*Mr. Maxwell Evarts* for appellant.

*Mr. Assistant Attorney Russell* for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

The controlling question in this case is whether the United States in 1893 erroneously issued to the Oregon and California Railroad Company, which succeeded to the rights of the Oregon Central Railroad Company, a patent for certain lands in Oregon.

These lands are without the place and within the indemnity

limits of the grant made by the act of Congress of May 4, 1870, c. 69, granting lands to aid in the construction of a railroad and telegraph line from Portland to Astoria and McMinnville in the State of Oregon. 16 Stat. 94. The provisions of this act were substantially the same as those of the act of July 25, 1866, referred to in *Oregon and California Railroad Company* v. *United States,* case No. 186, just decided, except that the act of 1870 contains a provision not found in the act of 1866, to wit: "That the Commissioner of the General Land Office shall cause the lands along the line of the said railroad to be surveyed with all convenient speed."

The line of the proposed road was definitely fixed and a plat thereof filed in the office of the Secretary of the Interior.

On the 16th day of February, 1872, the first twenty miles of the contemplated railroad were completed from Portland to a point near Forest Grove, in Oregon, and on the 23d of June, 1876, the road to the Yamhill River, near McMinnville, was completed, but it has never been constructed to Astoria, Oregon.

The final plat and survey of the township, in which the lands in dispute are situated, was not filed and approved until July 27, 1893; and on that day the company's list of selections of lands, which included the lands in question, were duly approved.

Prior to the year 1893, to wit, on the 12th day of January, 1891, Joseph H. Elison, a duly qualified entryman under the laws of the United States, settled upon the lands in dispute with the intention in good faith of "homesteading the same," and since that date he has continuously resided upon, cultivated and improved them; and within ninety days from the date of the filing of the township plat of survey he made application for "filing a homestead" covering these lands.

The selections by the company having been approved by the Land Department, a patent was issued to the Oregon and California Railroad Company on October 15, 1895. But it was issued without any knowledge at the time on the part of the Secretary or the General Land Office of the adverse claim of Elison, arising from his occupancy of the land.

For the reasons stated in the opinion just delivered in case

No. 186, we hold that, in virtue of Elison's. *bona fide* settlement upon the lands in dispute in 1891, with the intention, whenever the way was opened by a survey, to enter the lands under the homestead laws, his rights were superior to those acquired or that could have been acquired by the railroad company under any selection by it of indemnity lands made after the date of such settlement. The company's selection did not displace or defeat the right which the settler acquired by his settlement made previously in good faith with the intention to avail himself of the benefits of the homestead laws within due time after the lands were surveyed.

The railroad company rests its claim to have a superior right to these lands on the ground in part of long delay by the Commissioner of the Land Office in having them surveyed, although it frequently requested the survey to be made. There is nothing of substance in this contention. The statute, it is true, required the lands to be surveyed with all "convenient speed." But the question as to the precise time the lands should be surveyed was exclusively for the Land Office to determine; and it was to be determined with reference to all the facts and circumstances connected with the surveying of the public lands under the direction of the Land Department. We cannot say from the record that the Land Office, in the matter of the surveying of the particular lands here in dispute, did not act with convenient speed. Besides, the railroad company accepted the grant of Congress subject to the possibility of delay in the surveying, as well as to the power of the Land Office to determine when the lands should be surveyed. The action or non-action of the Land Department in such a matter cannot be controlled by the judiciary, unless perhaps in a case in which it appeared, beyond question, that its refusal to order the survey was merely arbitrary and without any real excuse. It may be that in such a case the Commissioner could be compelled by judicial process to discharge the duty imposed upon him by statute. But upon that point we need not express a decided opinion, for no such case is presented by the record before us. The allegation in the defendant's plea is simply that the Commissioner neglected to perform his duty in the matter of the surveying. But the

facts constituting such alleged neglect are not stated.    Besides, we may observe that since the right of the settler attached in virtue of his *bona fide* occupancy of these lands before the railroad company made its selection, that right could not be displaced by reason of any delay or negligence upon the part of the Commissioner to cause a survey of the lands.    The act contains no provision that requires a contrary view.    The court must determine the rights of the settler according to the facts as they existed at the time his occupancy in good faith began. The statute does not otherwise declare.    In that view, as already suggested, the settler's right was superior to any right acquired by the company, after the date of his occupancy, in virtue of its selection of these lands to supply a deficiency in the place limits.

Upon the authority of the case just decided, the decree of the Circuit Court of Appeals must be

*Affirmed.*

Mr. Justice Brewer took no part in the disposition of this case.