## CASES ARGUED AND DECIDED. IN THE SUPREME COURT OF LOUISIANA

AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1910

AND

AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1911

(55 South. 689.)

No. 18,433.

GOULD et al. v. POLLARD et al.

(June 15, 1911.  Rehearing Denied June 30, 1911.)

*(Syllabus by the Court.)*

1. PUBLIC LANDS (§ 79*)—GRANTS TO RAILROADS—LANDS INCLUDED—EXCEPTIONS.

The rights of an actual settler on land within the place limits of the grant made to the New Orleans Pacific Railway Company, by the act of Congress of February 8, 1887, c. 120, 24 Stat. 391, as between such settler and the company or those claiming title from the company, are not controlled or affected by the jurisprudence, predicated upon the general laws regulating the acquisition of pre-emption and homestead rights with respects to public lands; for those laws require, not only actual settlement on the land sought to be acquired, but (save where it may be impossible or where the application is improperly denied), the placing on record by the settler, in the Land Office, of a declaration of his purpose to acquire, or of his application for, such land, which must be followed by a compliance with other conditions; 129 LA.—1

whereas, under the act of 1887, all lands occupied by actual settlers at the date of the definite location of the line of the grantee's road, and still remaining in th 'r po⌐ ⌐sion, or in the possession of their hei⌐ ⌐ ⌐ ⌐ ⌐s, were, in terms, excepted from the gra⌐t, that, the title not being conveyed to such gr⌐⌐tee, it can be a matter of no concern to it, or to those claiming under it, whether the settler had plac⌐ his declaration or application of record. or had not done so, or whether he had afterwards abandoned his purpose to acquire the land.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 79.*]

2. PUBLIC LANDS (§ 79*)—RAILROAD GRANTS — OCCUPATION BY SETTLER — RELINQUISHMENT—EFFECT.

The facts that, after the grant to the New Orleans Pacific Railway Company, as contained in the act of February 8, 1887; after the definite location of the line of the road; and after a decision by the Commissioner of the General Land Office, adverse to the company, of a contest between it and defendant, as an actual settler, defendant executed an instrument purporting to relinquish his rights in favor of the company; and that his application for the land in controversy, for a homestead, was, thereupon, rejected by the Secretary of the Interior; could

2

not operate to vest the title of such land in said company, or to put the company in defendant's place, as an eligible applicant for a homestead, since the title remained in the government and the corporation had no capacity to acquire a homestead.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 79.*]

3. PUBLIC LANDS (§ 102*)—HOMESTEAD ENTRY —RELINQUISHMENT—FAILURE OF CONSIDERATION—EFFECT—JURISDICTION OF COURTS.

Under the agreement referred to in the act of Congress of February 8, 1887, the New Orleans Pacific Railway Company and those claiming under it are concluded, as between them and the contestee, both as to the status of such contestee and the identity and limits of the land, by an adverse ruling of the Commissioner of the General Land Office, in a contest between said company and a person claiming rights as an actual settler, within the meaning of said agreement, with respect to lands which were the subject thereof; but where, as in this case, the person so claiming thereafter executed an instrument relinquishing his rights, and his claim to a homestead (though he did so upon the faith of a promise which was not fulfilled and without other consideration), and his claim was thereupon rejected by the officers of the Land Department, who had no means of knowing why he had executed such instrument, the question of his reasserted rights, as between the government and him, is one which should, primarily, be acted on by said officers of the Land Department of the government.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 102.*]

Appeal from Thirteenth Judicial District Court, Parish of Grant; W. F. Blackman, Judge.

Action by George J. Gould and others against E. W. Pollard and others. Judgment for defendants, and plaintiffs appeal. Modified and affirmed.

W. C. & J. B. Roberts and Hudson, Potts & Bernstein, for appellants. Julius T. Long, for appellee E. W. Pollard. Wallace & Moss, for Hart-Behrens Lumber Co.

### Statement of the Case.

MONROE, J. Plaintiffs bring this petitory action for the recovery of a certain tract of land, described as the N. ½ of N. W. ¼ and S. E. ¼ of N. W. ¼ of section 21, township 6 N.; range 1 W., which tract was patented to the New Orleans Pacific Railway Company and was acquired by plaintiff through mesne conveyances and inheritance. They seek, also, to recover damages for the alleged cutting and removal of timber on and from said land, and to enjoin perpetually such further cutting and removal; and they obtained a preliminary injunction which prohibited defendants from cutting and removing timber and otherwise trespassing on said land. The defendants, for answer, say that the land in question was occupied by actual settlers long before the definite location of the line of the New Orleans Pacific Railway and was excepted from the grant relied on by plaintiffs. The defendant Pollard further says that he succeeded to such occupancy in 1882, has continuously occupied and cultivated said land since that time, and is a conditional owner thereof by reason of his having entered same as a homestead and made deposit of the necessary money to pay for it when the patent to the railway company shall have been canceled; and the other defendants, Hart & Adams Lumber Company, say, further, that they bought certain timber from Pollard, as the owner in possession, whom they believed to have a sufficient title to the land.

It appears from the evidence adduced upon the trial of the case that the Congress of the United States by act of March 3, 1871, c. 122, 16 Stat. 573, made a grant to the New Orleans, Baton Rouge & Vicksburg Railroad Company of alternate sections of land upon the line of a railroad, to be thereafter located and constructed; that the company mentioned assigned its rights, or such rights as it may at the time have had, under said grant, to the New Orleans Pacific Railway Company; and that Congress upon conditions which will be referred to hereafter confirmed to the company last named a portion of the original grant; that the tract here in question is coterminous with

land included in the portion of the grant so confirmed, and is opposite to that portion of the railroad the line of which was definitely located on November 17, 1882, and that a patent thereto was issued to said company on March 5, 1885; that said company, joined by the trustees of a land grant mortgage which had been executed by it, on August 21, 1886, quitclaimed said tract (with other lands) to the late Jay Gould, trustee; that said Gould, individually, thereafter, acquired said tract from the Missouri Pacific Railway Company (cestui que trust), which company, on March 31, 1894, confirmed the title to Gould's heirs, the present plaintiffs. In the meanwhile, and as far back as 1877, there were actual settlers occupying and cultivating a portion of the tract, and they have continued so to occupy and cultivate up to the present time, the defendant Pollard, having succeeded, as the assignee of the rights of his predecessor, to such occupancy, in 1882. None of the settlers, however, took any steps towards entering the land or placing of record any declaration of intention in regard to it, until July 2, 1894, when Pollard made application to enter it as a homestead, and the patentee having been notified, a hearing was ordered and had before the register and receiver at New Orleans, with the result that there was a ruling in favor of the claimant. From the ruling so made, the patentee, who had not appeared at the hearing, appealed to the Commissioner of the General Land Office, by whom, on May 17, 1895, the appeal was dismissed, on the ground that the appellee had not been notified. In so ruling, however, the commissioner said:

"The dismissal of the appeal does not preclude a consideration of the record, to ascertain whether said Pollard is entitled to enter the land. The testimony shows that the land had been occupied and cultivated, continuously, for a period of about fifteen years, prior to the hearing; that claimant purchased in 1882 from a prior settler, and established his residence thereon, with his family, and has continued to cultivate the same. Claimant's improvements consist of a dwelling house, kitchen, 2 corn cribs, garden and other outhouses, and 18 acres under cultivation, valued at $400. And, as it is shown that the land was occupied by an actual settler at the date of definite location, and in the possession of the homestead claimant, as the assignee of such settler, the claim is protected by the second section of the act of February 8, 1887, supra, and the land was erroneously patented to the railway company. In accordance with the agreement filed by the company and embodied in departmental letter of December 16, 1892 (15 L. D. 576), the claim of the company is rejected and the case closed. The company will be requested to reconvey the tract to the United States, in order that Edward W. Pollard may enter the same under the homestead laws," etc.

The act of 1887 thus referred to, declares (section 1) that certain of the lands granted, by the act of 1871, to the New Orleans, Baton Rouge & Vicksburg Railroad Company are forfeited:

"Sec. 2. * * * That the title of the United States and of the original grantee of the lands, granted by said act of Congress of March 3, 1871, to said grantee, the New Orleans, Baton Rouge & Vicksburg Railroad Company, not herein declared forfeited, is relinquished, granted, conveyed and confirmed to the New Orleans Pacific Railroad Company, said land to be located in accordance with maps filed by said New Orleans Pacific Railroad Company in the Department of the Interior October 27, 1881, and November 17, 1882, which indicate the definite location of said road. Provided: That all lands occupied by actual settlers at the date of definite location of said railroad and still remaining in their possession or in possession of their heirs or assigns shall be held and deemed excepted from said grant and shall be subject to entry under the public land laws of the United States.

"Sec. 3. * * * That the relinquishment of the lands and the confirmation of the grant, provided for in the second section of this act, shall take effect whenever the Secretary of the Interior is notified that said New Orleans Pacific Railroad Company, through the action of a majority of its stockholders, has accepted the provisions of this act, and is satisfied that said company has accepted and agreed to discharge all the duties and obligations imposed upon the New Orleans, Baton Rouge & Vicksburg R. R. Co. by the act of March 3, 1871, entitled: * * *

"Sec. 4. That it shall be the duty of the Secretary of the Interior, in issuing patents for the lands conveyed herein, to establish such rules and regulations as to enable all persons, who, on the first day of December, 1884, were in the actual occupancy of any of the lands to which the New Orleans Pacific Railroad Company is

entitled, under the provisions of this act, and who are of the description of persons entitled to make homestead or pre-emption entry on public lands so held by them, not to exceed in quantity one quarter section and not less than one sixteenth of a section, on payment to the said company, in lawful money of the United States, at the rate of $2.00 per acre for the lands so occupied, at one-third cash and the balance in such equal, annual, installments, as the Secretary of the Interior shall, by regulations, prescribe; it being the intention of this section to protect the settlers upon said lands and to give binding force and effect to the Blanchard-Robinson agreement, made with the New Orleans Pacific Railroad Company on the 4th day of January, 1882, and filed in the office of the Secretary of the Interior."

The agreement thus referred to is incorporated in a "departmental letter," from the Secretary of the Interior to the commissioner of the General Land Office, of date December 16, 1902, approving a list of lands to be patented to the New Orleans Pacific Railroad Company, in which letter the writer says:

"In approving this list, I have to call attention to the agreement filed on behalf of the company, which is as follows:

(1) That all appeals now pending before the Secretary of the Interior from decisions of the General Land Office, adjudging that adverse claimants were actual settlers at the date of definite location of said railway company's road, shall be and they are hereby withdrawn, to the end that said settlers may obtain patents for said lands.

"(2) That neither said railway company nor said trustees will hereafter take appeals to the Secretary of the Interior from the decisions of the Commissioner of the General Land Office adjudging that the adverse claimants were actual settlers at the date of definite location of the said railway company's road, but, to the end that said settlers may obtain patents for said lands, said adjudications by the said Commissioner shall be registered as final.

"(3) That, in cases where patents have been issued to said railway company for lands which have been or may hereafter be adjudged by the Commissioner of the General Land Office to have been in the possession of actual settlers at the date of the definite location of said railway company's road, and title is in said railway company, said * * * railway company and said trustees agree to make, without delay, conveyance thereof to the United States, and where such lands have been sold by said railway company to any third persons, said railway company undertakes to recover title thereto, without delay, and convey the same to said settlers or to the United States, and the said trustees agree to join in such conveyance and to do all acts necessary on their part to enable the railway company to carry out this agreement and stipulation."

After the decision of the commissioner, the Attorney General, at the request of the Secretary of the Interior, appears to have instituted suit against the railway company for the cancellation of the patents to certain lands, including the tract here in question, which the railway company had thus agreed to reconvey to the United States; but, on January 23, 1900, Pollard executed an instrument which was filed in the office of the Commissioner of the General Land Office, and which reads as follows:

"Before me, the undersigned notary, duly commissioned and qualified, came and appeared Edward W. Pollard, who, being first duly sworn, did depose and say: That he is the identical person who instituted a contest against the New Orleans Pacific Railway Company, on July 2, 1894, for the northwest quarter of section 21, in township 6 north, range 1 west, La. mer. Affiant hereby relinquishes any claim that he has heretofore asserted for said above described land to said railway company and its assigns and transferees."

Pollard testifies, without attempt at contradiction (so that we regard it as not only established, but as practically admitted), that he executed the instrument thus quoted at the request of O'Shee, who is shown to have been plaintiffs' land agent, and that O'Shee told him that, if he would sign it and would allow Barron (a millman) to cut over the timber, they (plaintiffs) would make him a title to the land; and the testimony proceeds as follows:

"I told him I wanted a title to the land. He said that they were not ready for a while to make it; that it would be attended to after a while. I did not get any title, and, after a while I got a lawyer to look after my title to the land. * * * Q. At the time you signed this document, purporting to be a relinquishment, did you receive any consideration for the same? A. No, sir."

The commissioner appears to have forwarded the instrument thus executed to the Secretary of the Interior, and, on April 8,

1901, the Assistant Secretary wrote to the commissioner as follows:

"Referring to your office letter of the 7th ultimo forwarding a relinquishment by Edward W. Pollard of his claim against the grant, to the New Orleans Pacific Railway Company, to the N. W. ¼ of sec. 21, T. 6 N., R. 1 W., La. mer. Louisiana, I have to advise you that the Attorney General has this day been requested to dismiss, as to this tract, the suit heretofore instituted against said company to recover title to this and other lands, held to have been erroneously patented to it. The relinquishment is herewith returned for the files of your office, and the claim of Pollard will stand rejected."

Thereafter, in December, 1909, this suit was brought, and there was judgment herein, in the district court, rejecting plaintiff's demands, dissolving the preliminary injunction, decreeing defendant Pollard to be the conditional owner of the land in dispute, and condemning plaintiffs to pay each of the defendants $50 as attorney's fees. Plaintiffs have appealed and defendants have answered praying for an increase in the amount awarded them.

### Opinion.

[1] The act of Congress of February 8, 1887, is unusual, in that it appears, upon its face, partially to embody and to express in the form of a statute, a compromise between, or on behalf of, certain actual settlers and the New Orleans Pacific Railway Company, with respect to certain lands, originally granted to the New Orleans, Baton Rouge & Vicksburg Railroad Company, and, apparently, forfeited by it, but subsequently regranted or confirmed to its assignee, the New Orleans Pacific Railway Company, pursuant to said compromise, of which, and of the statute partially embodying and expressing which, the "Blanchard-Robinson agreement," filed in the office of the Secretary of the Interior, is in effect made a part. It is further unusual, in that, whereas, ordinarily, a settler on public lands acquires neither pre-emption nor homestead rights with respect thereto by mere occupancy, and unless he places a declaration of intention or claim of record, and otherwise complies with the conditions imposed by law, or at least does all that it is possible for him to do towards complying with those conditions, the act now under consideration has for its declared purpose the exclusion from the grant, made to the railway company (pursuant to the compromise as we have called it), of all lands which were merely occupied by actual settlers at the date of the definite location of said company's railroad and which, at the time of the passage of the act, remained in the possession of such settlers, or of their heirs or assigns, and the subjecting of such lands to entry under the public land laws of the United States. In other words, the act recognizes the fact that the actual settlers to which it refers, who were in possession prior to the definite location of the line of the railroad, and who so remained until the act was passed, or whose heirs or assigns so remained; had not, up to that time, complied with the public land laws of the United States regulating the entry of public lands that they had placed on record no declaration or application, indicating any intention or desire to acquire the lands upon which they had settled, and had done nothing but settle on them, and it provided, nevertheless, that such lands should be "held and deemed excepted" from the grant which it made and should be subject to entry under the public land laws of the United States, so that the settlers might still acquire them by complying with those laws. Not only that, but the company—the grantee under which plaintiffs claim—agreed that it would not thereafter take appeals from the decision of the Commissioner of the General Land Office, adjudging that the adverse claimants were actual settlers at the date of the definite location of the said railway company's road, and further agreed that, in cases where patents had been issued to it for lands which had been, or might thereafter be, adjudged by the commissioner to have

been in the possession of actual settlers at the date of the definite location of the road, it would, without delay, make conveyance of such lands to the United States; and the act declares the intention of its section 4 to be:

"To protect the settlers upon said lands and to give binding force and effect to the Blanchard-Robinson agreement, made with the New Orleans Pacific Railway Company on the 4th day of January, 1882, and filed in the office of the Secretary of the Interior."

It further declares:

"That the relinquishment of the lands and the confirmation of this grant, provided for in the second section of this act, shall take effect whenever the Secretary of the Interior is notified that said New Orleans Pacific Railway Company, through the action of a majority of its stockholders, has accepted the provisions of this act," etc.

And it appears from the record that the provisions of the act were specifically accepted, by a resolution adopted by the stockholders of the company, on April 14, 1887, at which 67,000, out of a total of 67,200, shares of stock were voted in the affirmative.

It is, therefore, evident that this case is not controlled or affected by any jurisprudence, predicated upon the general public land laws of the United States, to the effect that mere settlement upon public lands confers no rights as against the government; that the claimant of pre-emption and homestead rights must place his declaration of intention or application of record and otherwise comply with the laws regulating the disposition of public lands; that, as between an actual settler and another claiming the land, an exception to the rule last above stated arises, and the settler is protected, though he placed no declaration or application of record, where it appears that he was unable to do so because there was no land office established or because his entry was improperly refused, and that he did all he could, and as soon as he could, to place his claim of record; that a general grant to a railroad company of a right of way through public lands does not carry with it the grant of a right of way through unsurveyed lands, lawfully occupied by an actual settler; which propositions, and others besides, are variously established in the following cases, to wit: Frisbie v. Whitney, 76 U. S. 187, 19 L. Ed. 668; Hutchings v. Low, 82 U. S. 77, 21 L. Ed. 82; Morrison v. Stalnaker, 104 U. S. 213, 26 L. Ed. 741; Buxton v. Traver, 130 U. S. 235, 9 Sup. Ct. 509, 32 L. Ed. 920; Shiver v. United States, 159 U. S. 491, 16 Sup. Ct. 54, 40 L. Ed. 231; Northern Pacific R. Co. v. Colburn, 164 U. S. 386, 17 Sup. Ct. 98, 41 L. Ed. 479; Whitney v. Taylor, 158 U. S. 85, 15 Sup. Ct. 796, 39 L. Ed. 906; Lytle v. Arkansas, 9 How. 314, 13 L. Ed. 153; Tarpey v. Madsen, 178 U. S. 216, 20 Sup. Ct. 849, 44 L. Ed. 1042; Nelson v. Northern Pac. R. Co., 188 U. S. 110, 23 Sup. Ct. 302, 47 L. Ed. 406; Oregon & Cal. R. Co. v. United States, 189 U. S. 104, 23 Sup. Ct. 615, 47 L. Ed. 726; Same v. Same, 189 U. S. 117, 23 Sup. Ct. 620, 47 L. Ed. 732.

In a case decided a few years ago, this court had occasion to construe the act of Congress of 1887, which is now under consideration, and Mr. Justice Land, as the organ of the court, said:

"The statute was a donation of public lands for railroad purposes, and the proviso" (referring to the proviso in section 2) "expressly excepted from the grant all lands occupied by actual settlers and declared such lands subject to entry. The actual occupancy of such lands excepted them from the operation of the grant and the rights of the settlers, quoad the government, did not concern the grantee." Lisso v. Devillier, 118 La. 561, 43 South. 164.

And so, it may be said here: The defendant, Pollard, or his assignor, having been an actual settler upon the land in question when the grant under which plaintiffs claim title was made, the title never passed to the grantee, and it does not concern the grantee or those who claim under the grantee whether the actual settler had taken

any steps to acquire title or not, nor does it concern them whether he, thereafter, took such steps, or whether he, afterwards, abandoned the property or abandoned his purpose to acquire it, or did both, since, in neither case, would the title have vested in the particular grantee to whom we are referring, any more than in any other grantee to whom the particular land in question had not been granted. The situation is similar to that which would be created, if, under the general public land laws, a settler, having taken the preliminary steps to acquire title, a railroad company, holding a grant, should definitely have located the line of its road, so as, otherwise, to have included the land settled on, but whose grant excepted lands to which a pre-emption or homestead claim had attached; with reference to which situation it has been held that:

"The subsequent failure of the person making the claim to comply with the acts of Congress, concerning residence, cultivation, and building on the land, or his actual abandonment of the claim, does not cause it to revert to the railroad company and become a part of the grant. The claim, having attached at the time of the filing of the definite line of the road, it did not pass by the grant, but was, by its express terms, excluded, and the company had no interest, reversionary or otherwise, in it." Kansas Pacific R. Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566, 28 L. Ed. 1122, syllabus. "The cancellation of the homestead entry, after the grant to the railroad and the definite location of its line of road, did not inure to the benefit of the railroad company, but the land reverted to the government and became part of the public domain, subject to appropriation by the first legal applicant." Hastings & Dacotah R. Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 33 L. Ed. 364, syllabus. See, also, Sioux City & Iowa Falls Lot & Land Co. v. Griffey, 143 U. S. 32, 12 Sup. Ct. 362, 36 L. Ed. 65; Bardon v. Northern Pac. R. Co., 145 U. S. 535, 12 Sup. Ct. 856, 36 L. Ed. 806.

[2] Whether, in the case at bar, Pollard was such an actual settler, within the meaning of the act of 1887, as to exclude the whole of the land here claimed from the grant to the railway company is a question that was put at issue by the contest which the company made against Pollard's application to enter the land as a homestead, and, according to the agreement referred to in the act mentioned, the decision of that question by the commissioner, to the effect that "the land was erroneously patented to the railway company," was final and conclusive as against the company; and, whatever other effect the subsequent relinquishment, in favor of the company, by Pollard, of his rights as an applicant for a homestead, may have had, it could not have vested the title of the land in the company, nor could it have put the company in Pollard's place as an eligible applicant for a homestead, for the title was, and still is, vested in the government (Shiver v. United States, 159 U. S. 493, 16 Sup. Ct. 54, 40 L. Ed. 231); and a corporation has no capacity to acquire public land for homestead purposes. It is, however, a fact that, though he did so upon the faith of representations and promises which have not been made good, and wholly without other consideration, Pollard did execute a written instrument relinquishing the homestead claim which he had placed on record in the Land Office; and, as the officers of that department had no means of knowing why he did so, and had no right to inquire, or to compel him to prosecute his claim, against his will, there was nothing for them to do but to accept the relinquishment and reject the claim. But the action so taken did not validate the patent which had been erroneously issued to the railway company, or vest in that company a title to land which had never been granted to it, and, it may be that, upon a proper presentation of the case, the officers of the land department will see their way to the reinstatement of Pollard in the position that he occupied before his relinquishment was executed and filed. [3] As the matter stands, we are of opinion that the judgment in this case should go no farther than to decree that the plaintiffs, claiming the land, have exhibited no title, and that their claim should be rejected, with such

damages as defendants have sustained, leaving the question of Pollard's title, as between him and the United States, to be acted on, primarily, by the proper officers of the Interior Department. The judge a quo, as we have stated, allowed the defendants each $50 as attorney's fees for the dissolution of the injunction, and we find no reason for increasing that award, the main service of the counsel having been rendered in the defense of the case on the merits.

With regard to other damages claimed, we find the testimony too indefinite to constitute the basis of a judgment. It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by striking therefrom, without prejudice to his rights in the premises, the clause whereby Edward W. Pollard is decreed to be the conditional owner of the land here in dispute and "entitled to homestead same, under the laws of the United States Government."

It is further decreed that, as thus amended, said judgment be affirmed at the cost of the plaintiffs.