## UNITED STATES v. NEW ORLEANS PAC. RY. CO. et al.

### No. 338.

District Court, W. D. Louisiana, Opelousas Division.

Aug. 1, 1931.

Philip H. Mecom, U. S. Atty., and J. Fair Hardin, Asst. U. S. Atty., both of Shreveport, La.

A. H. Garland, of Opelousas, La., for intervenor Annie Jason Andrews.

Dubuisson, Perrault & Burleigh, of Opelousas, La., for defendants Opelousas-St. Landry Securities Co. and others.

Thomas J. Freeman, of New Orleans, La., for defendant New Orleans Pac. Ry. Co.

L. Austin Fontenot, of Opelousas, La., for respondent Dr. Hawkins.

DAWKINS, District Judge.

This case was referred to a master, who has made his report of findings of fact and conclusions of law, which are as follows:

"This is a suit by the United States Government, growing out of the grant of March 3, 1871, to the New Orleans, Baton Rouge and Vicksburg Railroad Company (16 Stat. 573, c. 122) in which the government prays for judgment: (a) Cancelling and declaring null and void the patent issued to the New Orleans Pacific Railway Company (the assignee of the grantee) on December 28, 1892, in so far as the same includes:

"'Lots one (1), four (4), five (5), six (6), and seven (7) or fractional east half (E-½) of section thirty-five (35) south, range one (1) east, La. Meridian, in Evangeline parish, containing 141.48 acres.'

"(b) Or in the alternative that a decree be entered declaring the title held by the said defendants to be in trust for one Annie Jason, homestead settler, and that she be decreed to be the owner of said land and that the defendants be directed to make, execute and deliver to the said Annie Jason, settler, a deed to said property, etc.

"From the complaint it appears that this property by a regular chain of title was conveyed from and through New Orleans Pacific Railway Company by mesne conveyances to Dr. J. A. Haas, Trustee, who transferred a forty (40) percent undivided interest to the estate of Samuel Haas, and a sixty (60) percent undivided interest to the Opelousas-St. Landry Bank & Trust Company, the estate of Samuel Haas in this suit being represented by his heirs and legal representatives.

"The Mississippi Bank & Trust Company was also made a party to this suit as the record owner, by title deraigned from a tax sale of said property made some years theretofore, and was represented by a curator ad hoc, who by appearance filed on April 3rd, 1929, disclaimed any right or interest in the said property.

"The New Orleans Pacific Railway Company through its successor, the Texas and Pacific Railway Company, having been made parties, also disclaimed any right, title and interest in the said property. Therefore, the real defendants in this case are the Opelousas-St. Landry Securities Company, Inc. and the heirs of Samuel Haas, viz: Leon S. Haas, Hattie Haas, wife of W. D. Haas, Mattye Loeb, widow of A. M. Haas, natural tutrix of the minor, Martha Haas, and Nathalye Haas, wife of Maurice A. Hirsch. These defendants with the exception of Nathalye Haas Hirsch, who has made no appearance in this cause, first filed a motion to dismiss on two grounds: 1st. That the complainants' right to sue to annul said patent is prescribed by the lapse of five years, and 2nd. That a final judgment was rendered in its favor and against the said Annie Jason in the Sixteenth Judicial District Court of Louisiana, in and for the parish of Evangeline, which they plead as res judicata in bar of plaintiffs' action. This motion was overruled by the court.

"The defendants, Opelousas, St. Landry Securities Company, Inc. and the heirs of Samuel Haas, then answered, admitting the grant and that they held thereunder, denying the proceedings had before the Land Office for lack of sufficient information, and specially, reiterated the defenses pleaded in the motion to dismiss.

"Annie Jason, through her attorney, intervened, adopted the allegations of the complaint of the government, and made various allegations relative to the suit in the State Court upon which the defendants based their defense, which was also answered by these defendants.

"But I see no necessity to review the pleadings, inasmuch as the only questions which are presented for solution are those presented by the special defense pleaded by the defendants, whether or not, (a) the patent is prescribed, (b) whether the intervenor, Annie Jason, has been guilty of laches, and (c) that Annie Jason, settler, having taken charge of her own case the government has no further interest in this suit, and having no interest, that Annie Jason is barred by the judgment of the state court from prosecuting this action.

"This is one of the cases growing out of the grant made by the United States Government to the New Orleans Baton Rouge and Vicksburg Railroad Company, its successors and assigns, the New Orleans Pacific Railway Company being the assignee of the grant. The history of the grant and its terms, the contests thereof before the Land

Department, and its confirmation by the act of 1887 are all fully set forth and examined by Justice Van Devanter in United States v. New Orleans Pacific Railway Company, 248 U. S. 507, 39 S. Ct. 175, at pages 176 and 177, 63 L. Ed. 388.

"Suffice it to say at the present time that under the terms of the confirmation of the grant by Act of Congress of February 8, 1887, c. 120, 24 Stat. 391:

" 'That all said lands occupied by actual settlers at the date of the definite location of said road and still remaining in their possession or in possession of their heirs or assigns shall be held and deemed excepted from said grant and shall be subject to entry under the public land laws of the United States.'

"The patent in this case was granted to the New Orleans Pacific Railway Company on December 28, 1892, and included among other lands, the land hereinabove described, this being admitted in paragraph one of the answer. This grantee adopted the provisions of the act of February 8, 1887, (see document marked P–2); and transmitted the resolution adopting the same on April 14, 1887, (see document marked P–3); by letter of April 18, (see document marked P–4), all of which was transmitted from the Secretary of the Interior to the Commissioner of the General Land Office on April 22, 1887, (see document marked P–5).

"On August 3, 1892, the New Orleans Pacific Railway Company agreed and stipulated (see document P–6).

" '1. That all appeals now pending before the Secretary of the Interior from decisions of the Commissioner of the General Land Office adjudging that the adverse claimants were actual settlers at the date of definite location of said Railway Company's road shall be and they are hereby withdrawn, to the end that said settlers may obtain patents for said lands.

" '2. That neither said Railway Company nor said trustees will hereafter take appeals to the Secretary of the Interior from decisions of the Commissioner of the General Land Office adjudging that the adverse claimants were actual settlers at the date of definite location of the said Railway Company's road, but, to the end that said settlers may obtain patents for said lands, said adjudication by the said Commissioner shall be regarded as final.

" '3. That in cases where patents have issued to said Railway Company for lands which have been or may hereafter be ad-judged by the Commissioner of the General Land Office to have been in the possession of actual settlers at date of the definite location of said Railway Company's road, and title is in said Railway Company, said Railway Company and said trustees agree to make without delay conveyance thereof to the United States; and where such lands have been sold by said Railway Company to this persons, said Railway Company undertakes to recover title thereto without delay, and convey the same to said settlers or to the United States, and the said trustees undertake to join in such conveyances and to do all acts necessary on their part to enable the Railway Company to carry out this agreement and stipulation.'

"This agreement and stipulation was transmitted by the Railway Company to the Secretary of the Interior on August 5, 1892, (see document P–7).

"Therefore, the patent was issued to the Railway Company subject to the provisions of said act, and particularly subject to the provisions of the proviso in Section 2, hereinabove quoted, and subject to the obligations of the Railway Company under its agreement as fixed by the document marked P–6.

"By paragraph one of the Government's complaint, and by admission in article one of the defendant's answer, it appears that the part of the road opposite this land was definitely located September 18, 1882, by the filing of maps on that date; this land being situated on the completed line of railroad between White Castle and Shreveport, as in the case of the United States v. New Orleans Pacific R. Co., hereinabove cited; and like that case involved an odd numbered section situated within the twenty mile primary limit.

"On March 15, 1920, Louis Andrews filed application for homestead entry of said land. See 'Application' in document P–10 filed in evidence.

"Annie Jason was married to Louis Andrews (Andrus) August 6, 1874, (see document marked P–8).

"From the affidavit of Louis Andrews, dated March 15, 1920, forming part of the proceedings had before the Land Department, and included in the proceedings there had and offered in evidence, and marked P–10, it appears that he settled upon said land in the year 1874, and lived on said land continuously ever since; that he raised a family on the land and that they lived there with him; and cultivated nearly all of said tract,

had a fence around it and built improvements of the value of Two Thousand Two Hundred Fifty and no/100 ($2,250.00) Dollars, and never heard of any adverse claim to said land; that he had purchased the necessary right of one Canady to said land for Three Hundred and no/100 ($300.00) Dollars, in good faith; that prior to that time, Canady had been residing upon the land without adverse claim, and in good faith for a number of years past, and that previous thereto there had been another settler, named Robertson; that he did not know until a short time before he filed his claim as a settler that it was necessary to file a homestead application, but thought that his title was good by his purchase from Canady; and that he knew that the said land was settled upon and claimed by settlers long prior to the date when the New Orleans Pacific Railroad was located opposite said tract.

"The fact that Louis Andrews was a settler on said land prior, to the location of the said road is amply proven by the evidence taken at the hearing before the Land Department, by the evidence taken in the state court in the suit later referred to, and by that taken before me.

"At page 148 of the transcript of the testimony taken before me, it appears that Annie Jason moved on the land in controversy with her husband, Louis Andrews, about two or three months after their marriage, which took place in 1874; seventeen children were born of their marriage, 15 of whom were born and all of them reared on the property in controversy, and most of whom are still living thereon. It is true that in the testimony before the state court, page 54 of the transcript, she stated that she had moved there about three years after her marriage; but nevertheless, under either statement it appears that she moved there several years before 1882; that she has been living there since marriage is amply supported by the testimony of Mr. J. B. Anslem, page 9, Mr. Z. E. Carpenter, page 12, H. D. Courtney, page 13 of the transcript. Mr. Courtney testifies that he remembers when Louis Andrews and Annie Jason were married, though he cannot remember the date, but as soon as they were married they went on the place and have been there ever since; that he knows that they were married before he married, and he married in 1880; and that he believes Louis Andrews and Annie Jason were married in 1874, (page 14); that he remembers their marriage because it was one of the few at a time when negroes began

to have ceremonies like white people. He is seventy-five years old, and always lived in that locality. From the testimony had in the state court, it also appears that Louis Andrews and Annie Jason were on this property prior to 1882.

"Mr. Courtney in his testimony says that the first settler on this land was Robertson, that Robertson died, and that Canady then lived there, and then Louis Andrews; that Louis Andrews always told him that he paid Three Hundred and no/100 ($300.00) Dollars to Canady for the land.

"Mr. Neal, Examiner of the General Land Office, made an examination of the claim of Annie Jason in 1928, who gave opinion testimony bearing out the testimony of these witnesses.

"He and Mr. Courtney both testified with plat of survey made by Albert Tate, marked P-9, before them; and stated that the survey was correct, as to the location of the houses and fences, and as to its showing of the land cleared and under cultivation.

"From the testimony of these named witnesses, and from the testimony of all the witnesses who testified in the state court, it appears that Louis Andrews and his wife lived continuously on this land from about the year 1874; that when they moved there some ten or fifteen acres had been cleared; and that they cleared considerable acreage more; and built improvements thereon of the value of more than Two Thousand and no/100 ($2,000.00) Dollars; and raised a family of seventeen children on this land, most of whom are still residing thereon.

"While the testimony in the state court may not have been sufficient to sustain a plea of prescription of thirty years, acquirendi causa, yet it was abundantly sufficient to show this property had been settled and was occupied prior to the establishment of the railroad in 1882, by one having all the qualifications of a homesteader; and that the possession thus acquired continued in good faith, openly and notoriously until the trial of this cause, and is still continuing unless this possession was ousted by the constructive possession of the defendants by virtue of the judgment of the state court and the sale of the said property by the defendants to the son and son-in-law of Annie Jason.

"The defendants offered in evidence the entire record in the case of Opelousas-St. Landry Bank & Trust Company, et al. v. Annie Jason, widow of Louis Andrews, No. 1907

of the Civil Docket of the then Sixteenth Judicial District Court of Louisiana in and for the parish of Evangeline; and this entire record is copied in the transcript and covers pages 33 to 148.

"This suit is strictly a petitory action based upon the plaintiff's title; the defendant is Annie Jason. She first filed a plea of lis pendens, shown on page 21 of the transcript, by which she pleads the contest pending before the Department of the Interior; and that if said contest results in her favor she will become the owner of said land by patent from the Government; this plea was overruled by the court. She then answered pleading purchase from Canady and the prescription of thirty years, but did not plead her rights as settler. Judgment was rendered by the District Court on November 24, 1924 (page 44 of the transcript) rejecting her demands. A writ of possession was issued in said suit on April 1, 1925, and the return shows that the Sheriff, in the execution of said writ on April 6, 1925, notified Annie Jason Andrews to vacate, and on April 11, 1925, 'placed the Opelousas-St. Landry Bank & Trust Company, Nathalye Haas, Leon S. Haas, Hattie Haas and the minor, Martha E. Haas, in full possession of the premises within described.'

"On October 21, 1925, these defendants sold the property to Robert Andrews and Herbert Simon, the son and son-in-law of Annie Jason; and it is averred in the answer that these purchasers have been in possession of said lands since the Fall of 1924, first under an oral lease agreement and since October 1925, by virtue of the said sale; that said lease and said sale were made with the full knowledge, acquiescence and consent of Annie Jason, who permitted Robert Andrews and Simon to occupy said property as lessees of the said defendants and as owners; that Annie Jason resided on said property not as owner but as the tenant-at-will of Andrews and Simon. But there is no evidence in the record substantiating said allegation as to the lease of the said property; and no evidence of the sale to Andrews and Simon, it being evidently considered not necessary to offer said sale in evidence insomuch as it is alleged by the government to have been made and admitted by the defendants.

"The testimony of Annie Jason and of the other witnesses who testified before me clearly show that Annie Jason was still living on the property on the date of the hearing before me on January 31, 1931.

"The property in controversy seems to have been assessed for taxes only twice: Between 1921 and the date of the hearing it was assessed in 1925, to the Opelousas-St. Landry Bank & Trust Company and the estate of Samuel Haas, (see page 6 of the transcript). In 1920, 1921 and 1922 they were not assessed to Dr. John A. Haas, Trustee, or individually, (see certificate of Sheriff in file P–10); and prior thereto was assessed only in 1916 and 1917, once to Cassell in 1916, and one in 1917 to Dr. J. A. Haas, Trustee. (See testimony of A. H. Garland in the proceedings of the Land Department, marked P–10). The defendants on their cross-examination of the assessor, who testified as to the payment of taxes since 1921, attempt to show inferentially that the property might have been assessed before 1925, and that as many properties in St. Landry are in the Spanish grants or assessed by boundaries, and, therefore, difficult of identification, the assessor's testimony might be erroneous. However, Dr. J. A. Haas, trustee, owned the property from July 6, 1915, until April 10, 1924, when it was sold to the defendants in this case; and, these defendants, though knowing whether or not this property was assessed to them and had paid their own taxes thereon, made no attempt at proving this.

"Final decision was rendered by the Land Department on May 29, 1925, after the trial and rendition of judgment by the State Court; and it is alleged but not proven that the Commissioner of the Government Land Office only affirmed the decision of the Register of the Land Office at Baton Rouge, on March 24, 1926.

"In his oral argument, counsel for the defendants admitted that there was no controversy over the facts; and I do not believe there is any.

"I, therefore, find as a fact that the part of the railroad opposite these lands was definitely located November 17, 1882; that prior to the year 1874 there were actual settlers on the land in controversy in this case; and that sometime between 1874 and 1877 Louis Andrews and his wife, Annie Jason, moved on the said property and remained thereon continuously up to the year 1920, when Louis Andrews died; that thereafter his widow, Annie Jason, lived thereon up to the trial of this cause, and is still living thereon; Louis Andrews had the qualifications named in the homestead law and was expecting to acquire the title under the law, had placed on the land a habitable dwelling in

which he and his family were living and subsequently built numerous other houses and improvements for himself and children; and that at the time of his death had cleared, fenced and was cultivating over half of said tract, and was asserting a claim to the entire tract; and by operation of law his widow, Annie Jason, succeeded to and was entitled to all the benefits under the Act of February 8, 1887, through continuous occupancy of the said land with her said husband from 1874, to the time of her husband's death in June 1920, and through her own continuous occupancy and residence thereon since that time.

"I further find the existence in extent of these claims were well known among the people of the neighborhood and the improvements and evidences of inhabitancy and cultivation of said tract were such that any one purchasing under the land grant should have been acquainted with the nature and existence of the settler's claim.

"Having found that Annie Jason, widow of Louis Andrews, was entitled to all the rights under the act of 1887, the legal questions presented by the defendants must now be considered.

■ "Taking up the first relief prayed for to cancel and declare null and void the patent issued to the New Orleans Pacific Railway Company on December 28, 1892, insofar as the same includes the tract of land hereinabove described, I am of the opinion that the plea of the defendants that as the patent was issued December 28, 1892, and the bill was not filed until November 28, 1928, and, therefore, 'issued before said suit was brought, and the suits were brought more than five years after, the Act of March 2, 1896, c. 39, 29 Stat. 42 (Comp. St. 4901–4903 [43 USCA §§ 900–902]) that the prayer that the patents be canceled must be put out of view, and the alternative part: that the title under the patents be declared to be held in trust for the homestead complainant, Annie Jason, widow, and the trust enforced, must be regarded as if standing alone.' United States v. New Orleans Pacific Railway Company, 248 U. S. 507, 39 S. Ct. 175, 178, 63 L. Ed. 388.

■ "It is clear that by the proviso in section 2 hereinabove quoted and the latter part of section 6 of the Act of 1887 (24 Stat. 391, 392), that the lands in controversy in this case having been occupied by actual settlers at the time of the definite location of the road, and having remained in that possession were 'excepted from said grant' and made 'subject to entry under the public land laws' of the United States. United States v. New Orleans Pacific Railway Company, supra, page 177 of 248 U. S., 39 S. Ct. 175.

" 'The statute was a donation of public lands for railroad purposes, and the proviso [referring to the proviso in section 2] expressly excepted from the grant all lands occupied by actual settlers, and declared such lands subject to entry. The actual occupancy of such lands excepted them from the operation of the grant, and the rights of the settlers quoad the government did not concern the grantee.' Lisso v. Devillier, 118 La. 561, 43 So. 163, 164. See, also, Gould v. Pollard, 129 La. page 1, 55 So. 689.

■ "In purchasing this property the defendants have not the status of bona fide purchasers; the act of 1887 operated to exclude from the grant the land in controversy; the Land Department of the United States having found that the claim of Annie Jason, widow, as a settler was meritorious, and that she was entitled thereto (its decision being final as against the Railroad Company and their assignees, Gould v. Pollard, 129 La. page 14, 55 So. 689) it became the duty of the Railway Company to surrender the title; intending purchasers were bound to take notice of the occupancy of the settlers, and this, with the act of 1887, which was a public law, precludes the defendants, who hold the title under the aforesaid patent, from claiming the status of bona fide purchasers. United States v. New Orleans Pacific Railway Company, supra, 248 U. S. 507, 39 S. Ct. 175, page 179, 63 L. Ed. 388.

"Ordinarily, land forming part of the public domain, cannot be lost by the government through laches but as I interpret the decision of United States v. New Orleans Pacific Railway Company, supra, when the suit, although in the name of the United States, is brought for the benefit of a private person, his laches may be interposed with like effect as if he were suing. See the above case, first column, page 179 of 39 S. Ct. or page 519 of 248 U. S. See U. S. v. Beebe, 127 U. S. 338, 8 S. Ct. 1083, 32 L. Ed. 121.

"The defense of laches could, therefore, be pleaded against the government in this case. But was there such laches as would bar the relief sought? Though the plea of laches was interposed, and fully covered by the brief of the defendants, as a matter of law, yet in what way has the intervenor, Annie Jason, been guilty of laches is not suggested.

"In one of the cases decided in the United States v. New Orleans Pacific Railway Co.,

supra, it was found as a fact by the Court of Appeals, 235 F. 841, 149 C. C. A. 153, that the Railroad Company had previously sold a part of the land granted to it but excepted therefrom because occupied by a settler as in this case, and appropriated the proceeds to its own use, and soon afterwards disposed of the rest of the land; and the successive holders of the record title thereafter dealt openly with the land as their own without admitting that the intervenor (who like Annie Jason was a settler) had any beneficiary interest in it or in the proceeds of sales. They had the land regularly assessed to them and regularly paid the taxes thereon. Though the settler knew the facts, and though the conduct of the holders of the record title was disclosed by public records, the settler took no action to enforce his claims for over twenty-five (25) years, but continued to live on a small part of the land in the midst of the woods covering the remaining land. On these facts the Court of Appeals held that as the Railroad Company held it in trust for the settler, the resulting right of action to enforce such trust accrued in 1887 and was barred by the settlers inexcusable laches. On this state of facts the Supreme Court of the United States in the said case of the United States v. New Orleans Pac. Ry. Co., supra, said:

" 'We are unable to concur in that conclusion. The occupancy of the settlers was both peaceable and continuous and gave notice of their equitable rights. Their claims were asserted before the land department, were the subjects of hearings and appeals, and were by it sustained. The land officers, conformably to the published regulations, undertook to secure a restoration of the outstanding title, and to that end the suit of 1901 was brought. The settlers were justified in believing that their rights were being protected, as was required by the act of 1887. No attempt was made to disturb their occupancy or to assert any right against them. We therefore think it properly cannot be said that they were guilty of any such laches as precluded them from obtaining relief in equity. As a general rule, one who is in peaceable possession under an equitable claim does not subject himself to a charge of laches for mere delay in resorting to equity to establish his claim against the holder of the legal title where the latter manifests no purpose to disturb him or to question his claim. Ruckman v. Cory, 129 U. S. 387, 389–390, 9 S. Ct. 316, 32 L. Ed. 728. We think that rule is applicable here.'

"Notwithstanding the existence of these facts the Supreme Court found no laches; and in this case the facts are certainly more favorable to the intervenor or settler. Not only did her husband, and after his death herself settle on said land several years prior to the completion of the railroad but lived on the said land continuously from that time and up to the present time; they had the actual possession thereof, built several houses thereon, cultivated the same, and exercised all the rights of ownership during all of the said time. None of the record owners made any pretense at exercising any right of ownership, except that about the year 1917, being two or three years before Louis Andrews died, an agent of Dr. Haas, informed them they would have to pay rent; see pages 56 and 60 of the transcript; at page 57 of the transcript however Annie Jason, under the objection of counsel, was permitted to state that Dr. Haas would not let her have some lumber because the property wasn't his. At all events, she paid no rent to any one at any time. These isolated statements on the part of the intervenor taken alone cannot be construed as an exercise of the right of ownership on the part of the defendants. Though the plea of laches was a special defense, they offered no additional evidence on the trial of this case on their plea of laches than that found in the evidence in the suit before the state court, and I would think it would be fair to presume that as the exercise of any rights by them was peculiarly within their knowledge that their failure to do so presupposes any liability in that respect. They paid no taxes on said land except in the isolated instances mentioned, though their title dates back many years prior thereto. The intervenor was sued in the State Court, gave notice of the pending hearing before the Land Department tried the case and judgment rendered against her. A writ of possession was sued out, and the return shows that the plaintiffs were 'placed' in possession; but the settler was evidently not evicted inasmuch as her testimony in this case shows that she continued to reside on the said property and was so residing at the time of the trial of this cause. Though under the laws of the State of Louisiana, if the party against whom judgment was rendered and who has been condemned to quit the estate, refused to obey the order and go off, the Sheriff is directed to put the other party in fullest possession and to compel the other party to depart 'even by breaking open the doors, if it be necessary, and by summoning

the posse comitatus, if resistance be made,' (Code Prac. Art. 632) the Sheriff's return is silent on this fact. ·There being positive testimony to the contrary, I am bound to conclude not only that she was not compelled to depart but continued to remain on said property for nearly six years thereafter and never compelled to depart though the defendants in this case could have invoked the aid of the State Court had they so desired.

"The defendants contend that as Annie Jason intervened in this suit that it is similar to the proposition that if an agent sues on behalf of his principal and the principal appears and takes charge of his own case, the agent becomes functus officio. This is disposed of by the fact that in the New Orleans Pacific Railway Case above cited, the intervenor had also appeared and was a party to the suit.

"I, therefore, conclude that the defense of laches has not been made out and that the settler, Annie Jason, has not been guilty of such laches as would bar her from recovery.

"This brings us to the second ground of defense, plea of res adjudicata, based on the judgment of the State Court.

"This suggests the question whether or not the Government is bound by a judgment rendered in the State Court, to which it was not a party.

"In this State, 'in a petitory action, the defendant is bound to plead all the titles under which he claims to be owner, and a final judgment rendered in favor of the plaintiff may be pleaded as res judicata against any title which the defendant was possessed of at the time, but omitted to plead.' Shaffer v. Scuddy, 14 La. Ann. 575. This doctrine has been followed in the Succession of Whitner, 165 La. 769, 116 So. 180, 181, but with the proper qualification 'every plea or defense which either of the parties might successfully have made.'

"Assuredly, if the State Court had the right to adjudicate upon the settler's claim of Annie Jason, this plea might have been available; but Annie Jason had only an inchoate right to this property, which did not become perfected until adjudicated upon by the Land Department, the decision of which is 'final and conclusive as against the company.' Gould v. Pollard, 129 La. page 1, 14, 55 So. 689, 693.

"Any investigation which the State Court might have made of the settler's right of Annie Jason, (which by the act of 1887 and by the contract and agreement of the New Orleans Pacific Railway Company and by the land laws of the United States,.is vested in the Land Department as it only can determine under what conditions any part of the public domain can be segregated) would have been futile; such finding could not have been binding on the Land Department or the United States Government as long as said land formed a part of the public domain.

" 'It is settled that in such a situation the courts may not take up the adjudication of the pending claims, but must await the decision of the land officers and the issue of patents· in regular course.' Northern Pacific Railway Company v. McComas, 250 U. S. 387, 39 S. Ct. 546 and authorities cited at page 548, 63 L. Ed. 1049.

"I believe that the case of Gould v. Pollard, 129 La. page 1, 55 So. 689, is decisive of the question. The facts of the case were similar, the land in question had been settled prior to 1882, a patent had been issued to the New Orleans Pacific Railway Company· on March 5, 1885; the rights of Pollard as a settler had already been adjudicated favorably to him by the Land Department; suit had been instituted, as in this case for the cancellation of patents; and while said suit was pending Pollard, the settler, relinquished without consideration any claim to said land in favor of the said Railway Company, and its assigns and transferees; this relinquishment was sent to the Land Department and the Attorney General requested to dismiss his suit as against this particular tract. Notwithstanding this the Court held that while the Land Department had no right to compel Pollard to prosecute his claim, against his will, that his relinquishment did not validate the patent erroneously issued to the Railway Company or vest in that Company title to land which had never been granted to it; that such relinquishment could not have vested the title to the land in the Company nor could it have put the Company in Pollard's place as an eligible applicant for a homestead, for the title was, and still was, vested in the government, and the corporation had no capacity to acquire public land for homestead purposes. On this state of fact and after these findings the Court rendered judgment against the assignee of the Railway Company because they had exhibited no title, leaving the question of Pollard's title as between him and the United States to be acted on, primarily, by the Interior Department.

"If an elaborate relinquishment, even though made without consideration, in favor

of the assignees of the Railway Company could not vest title in them, judgment of the State Court could not do so. The plaintiffs in this case knew and were aware that the rights of Annie Jason were being investigated and would be adjudicated upon by the Land Department; they made no appearance, though notified, in the contest before the Land Department which was prolonged over a period of several years; and asserted no rights to the property. Instead they instituted suit before a State Court against the settler when they had no title, as held in Gould v. Pollard. If a judgment of the State Court under such circumstances could invest title in the Railway Company the effect would be to set at naught the conditions under which they acquired title and confer upon them the rights of a homestead settler, and to take as settlers the land belonging to the public domain, when they themselves may not possess the qualifications.

"On the other hand until the rights of Annie Jason had been finally adjudicated upon by the Land Department the legal title to the land in dispute remained in the United States; the State Courts were powerless to examine into her rights; and if they could not do so Annie Jason was powerless to plead any right that she might have had as settler in this suit in the State Court. See Northern Pacific Ry. Co. v. McComas, supra, and Hall & Legan Lumber Co. v. Jeter, 127 La. 229, 53 So. 533, the syllabus of which reads:

" 'Courts will not interfere with the officers of the government while in the discharge of their duties in disposing of the public lands; but, after the United States has parted with its legal title, the equities subject to which the patentee holds the title may be enforced by the courts.'

"I, therefore, believe that the defense of res adjudicata cannot be sustained.

"I, therefore, recommend that judgment be rendered rejecting the demand of the plaintiff to cancel and declare null and void the said patent of December 28, 1892, but that the alternative relief be granted and a decree entered declaring the title held by the defendants to be in trust for the said Annie Jason, the homestead settler or her heirs or assigns; that she be decreed to be the owner of said land and that the defendants be directed to make, execute and deliver to the said Annie Jason, settler, her heirs or assigns, a deed and assignment conveying all their right, title and interest to the said land, and on their default or failure to do so that such deed be made by the Clerk or some other person duly appointed thereto by your Honor."

Respondents have filed the following exceptions to the report:

"First. That said report erroneously holds that Mrs. Nathalye Haas Hirsch made no appearance in this cause, because, as a matter of fact, she did appear, though subsequent to her co-defendants, on the 31st day of January, 1931, and adopted 'all motions, answers and exceptions' filed by them 'as fully and completely as if specifically set forth. * * * in extenso.'

"Second. That it erroneously holds that the Land Office of the Department of the Interior had jurisdiction to adjudicate upon the rights of the parties hereto after the issuance of a patent for the land in controversy. Moore v. Robbins, 96 U. S. 530, 24 L. Ed. 848.

"Third. That it erroneously holds that defendants either pleaded or urged laches as a defense herein.

"Fourth. That it erroneously holds after sustaining defendants' plea of prescription (Statute of Limitations) against the Government's plea to annul the patent that the Government still had any right, title or interest of its own in the land in controversy.

"Fifth. That it erroneously holds that defendant's plea of res judicata was not good because (1) the Government was no party to the suit in which the judgment pleaded as estoppel was rendered, in spite of the fact that the Government appears herein as the representative of Annie Jason Andrews, who was a party; and (2) because defendants had no valid title which they could urge in that suit, when, under the plea, such matters can not be inquired into.

"Sixth. That it erroneously holds that (1) the Government did not cease to have any interest in the case after the alleged settler appeared in her own behalf by intervention; and that (2) the Government did not then become functus officio as her representative."

An examination of the record shows that the master was mistaken in stating that Mrs. Nathalye Haas Hirsch had not appeared. She did appear and joined the other defendants in all of their exceptions and defenses. It is also true that defendants did not plead laches specifically, but the argument in brief with respect to the case of United States v. New Orleans Pacific Railway Company, reported in 248 U. S. 507, 39 S. Ct. 175, 63 L. Ed. 388, which turned mainly upon such a

plea, misled the master into assuming that such contention was being made.

I think the master has correctly found that the government had the right to maintain this action for the benefit of the intervener, Annie Jason Andrews, both under the statute and its agreement with the grantee railroad; and, further, that the issue involved here with respect to the equitable title was not and could not have been raised in the state court. Ample notice of the pendency of her claims before the Land Department was given in that case and the defense was really one of possession and prescription under the Louisiana Code, whereas, until she had obtained from the government a patent or had succeeded in canceling the one granted to the railroad, or otherwise had her inchoate title recognized, the same could not have been maintained as a legal defense to the apparently lawful title of the plaintiff in that petitory action under the state law.

Therefore, for the reasons indicated and for the further reason that the government is a party to this suit, asserting a contractual obligation in its favor which was not available to Annie Jason Andrews, I think the plea of res judicata was correctly overruled by the master.

Otherwise, I approve the findings of fact and conclusions of law of the master and adopt the same as the decision of this court. Proper decree may be presented.